Shippen, C. J.
delivered the charge of the court, in substance, as follows :
The case before us is of great moment. It involves in it the important rights of electors, as well as the preservation of the purity and peace of elections. ' It has been fully argued by the counsel on both sides, and nothing remains for us, except to narrow the bounds of disquisition, and pronounce our opinion of the law resulting from the facts. The three first counts in the indictment are grounded on the act, to regulate general elections, passed on the 15th February 1799. - This law pursues the language of the 1st section of the 3d article of the present state constitution, in the enumeration of the qualifications of electors as citizens, and prescribes rules and terms under which the suf-frages of foreigners shall be received.
The qualifications in the first instance are citizenship, by being born within the state, or being settled therein on the 28th September *1776, (when the first state constitution was formed;) being of full age, residence within the state two [*437 years next before the election, and payment within that time of a state or county tax, which shall have been assessed at least six months before the election; with a provision, in favour of the sons of qualified citizens, between the ages of 21 and 22 years, who have not paid taxes. “ Every citizen having paid taxes and “resided as aforesaid, and claiming a right to vote, shall make “ proof thereof,” &c. are the words of the first section of the act; which compared with the words of the fifth section, shew that no *437 other questions can be put to the- electors, than may tend to shew whether they are possessed of these qualifications. The rule of law holds -in this case, that expressio unius, est cxchisio alterius.
Besides, it has been objected, that the questions propounded to the electors, contravene an established principle of law. The maxim is, neme tenetur seipsum accusare, (seu prodere.) It is founded on the best policy, and runs throughout our whole system of jurisprudence. It is the uniform practice of courts of justice as to witnesses and jurors. It is considered cruel and unjust to propose questions which may tend to criminate the party. And so jealous have the legislature of this commonwealth been, of this mode of discovery of facts, that they refused their assent to a bill brought in, to compel persons-to disclose on oath, papers as well as facts, relating to questions of mere property. And may we not justly suppose, that they would not be less jealous of securing our citizens against this mode of self accusation. The words accusare or prodere are general terms, and their sense is not confined to cases, where the answers to the questions proposed would induce to the punishment of the party; if they would involve him in shame or reproach, he is under no obligation to answer them. The avowed object of putting them, is to shew, that the party is under a legal disability to elect or be elected ; and they might create an incapacity to take either by purchase or descent, to be a witness or juror, &c. We are all clear on this point, that the inspectors were not justified in proposing the questions obj ected to, though it is probable they did not wrong intentionally. Nevertheless, if by exacting an illegal oath, the election was obstructed or interrupted, it seems most reasonable to attribute it to them.
Another ground of defence has been taken. It is said, that the intimidation, threats, violence or interruption must be the effects of intention. And that so far from there being a design to overawe or obstruct the election in the present instance, it appears by the evidence, that the affair was sudden and unpremeditated ; and that the improper warmth of the defendant took *its rise from some harsh expressions used by the inspector *438] towards his father. The severe penalty annexed to the offence shews in what light the legislature have viewed it. Our code of laws is generally mild and lenient, and their intention could not have been to have subjected a slight unde-signed interruption of an election to so rigorous a punishment.. To constitute the offence, it would seem that there should be a pre-conceived design and intention to intimidate the officers, or interrupt the election, and the three first counts of this indictment lays the offence to have been committed with such design and intention. It must be admitted, that the conduct of the defendant was highly intemperate and blameable, but if it sprung from the passion of the moment, under an impression that his father had been hardly treated, and not from an intention of in *438 terrupting the election, he does not seem to be within the meaning of the law.
With respect to the two last counts in the indictment for the assault on John Beckley, there is a contrariety of evidence. The jury must determine the fact for themselves, whether the defendant was' within reach of him, when he held up his hand clenched, in an angry and menacing manner, and the verdict should correspond with the fact so found. Unless Beckley was within his reach, he cannot be guilty of the assault.
The questions before the jury are of great importance. We trust that party considerations will have no weight in their decision of them. The court have laid down this as an undeviating rule of conduct for themselves, and flatter themselves they have evinced their adherence to it on more than one occasion.
Verdict, not guilty.