# Lessee of Mary Galbreath, Thomas Johnston and Rebecca his wife, and Edward Abbot and Jane his wife *against* Leonard Eichelberger.

No one will be compelled to be sworn as a witness, whose testimony tends to accuse himself of an immoral act.

EJECTMENT for three undivided eighth parts of lands in Monaughan township.

It was admitted, that James Dill was seized of these lands. The lessors of the plaintiff claimed as his daughters, and their title depended on invalidating a deed made by their father to their brother John Dill, for the premises, dated 13th April *1784, in consideration of 600l. It was contended, that [*516 John was then under 21 years of age, and a mere trustee to preserve the title in the family against the effects of two sheriff's bonds, in which the father was surety for Charles Lukens, esq. on one of which a judgment was obtained for 2000l. in October term 1784, and on the other for the like sum in October term 1787, and Lukens died insolvent in January 1784; and that another deed for other lands was given to Robert, another son, dated 12th April 1784, in consideration of 300l., though he was then in his 17th year, and lived with his father, who managed his farms in the same manner as before giving the deeds.

To prove these circumstances, and that John had, subsequent to his deed, leased the lands in question from his father, and acted under his direction, the plaintiffs' counsel called the said Robert Dill as a witness, who appeared and submitted to the court, whether under the circumstances of the case, he should be compelled to be sworn.

The defendant's counsel objected that he was interested in the question now trying. If the plaintiff can succeed in the

[Galbreath's Lessee *v.* Eichelberger.]

present suit, he will have still less to encounter, against a younger brother, confessedly under age, when his deed was executed, for a supposed valuable consideration.     Besides his declarations may be given in evidence against him in a future ejectment brought for the lands conveyed to him.

It would moreover be a violation of the maxim "*nemo tene-* "*tur prodere seipsum.*"     Peak Evid. 132.     If he has accepted from his father a deed for the lands, with a view to defraud creditors, an indictment will lie against him.

*E contra* it was answered, that it was now settled, that the true principle is, where the verdict cannot be given in evidence, either for or against the witness in any other suit, he may be sworn, because he cannot in such case gain or lose by the event of the cause.     Bent *v.* Baker *et al.,* 3 Term Rep. 27.     He must be immediately benefited or injured by the event, before he shall be repelled from giving testimony.     Peak Evid. 93, 94. This principle has been so often recognized in this court, that the point has been deemed at rest.     The witness's title is not now in litigation ; but the question is, whether or not he is a competent witness in the ejectment against his brother.

As to the application of the maxim, we know not, that an indictment would lie against him for accepting his deed, or that any pecuniary loss could flow therefrom, on his being examined here.     The court will not anticipate the questions which may be \*asked ; some may be propounded which may be wholly unexceptionable, and others may be overruled. The superintending authority of the court will be exercised as occasions arise, and will confine the witness to the point in issue.     His deed is not attacked, but it is wished to extract from him, that his brother John. was the trustee and tenant of his father of the premises, until the time of his death.

The court were divided in opinion, whether the witness was receivable on the ground of interest.     YEATES, J. declared himself in the affirmative, and SMITH, J. in the negative.     But they readily agreed that he was privileged from giving evidence, under the maxim cited.     They could not avoid seeing the tendency of his examination, disguise it as you will.     The plaintiffs' strong hold was, that the deeds were executed to protect the property against the judgment, which was to ensue in six months, and that the father and sons combined together to defraud the creditors of the former, and to create a trust for his use.     If it should even be conceded, that an indictment would not lie against the witness for agreeing to accept this deed, which though void against creditors, might be good against the grantor and his heirs, yet the combination itself was nefarious and immoral, and would justly subject every person concerned in it to ignominy and contempt, and was therefore within the construction of the maxim, as lately adopted in Respub. *v.* Gibbs,

[Runkle *v.* Meyer et al.]

in bank.   The rules of evidence* are founded in reason and good sense.

To oblige the witness to be sworn under the circumstances of this case, would be in effect compelling him to accuse himself of an immoral act, and a violation of his privileges as a citizen.†

The exception is therefore allowed.

The plaintiff suffered a nonsuit.

Messrs. Duncan and Watts, *pro quer.*

Messrs. Bowie and Hopkins, *pro def.*

Cited in 94 Pa. 151 in support of the decision that the testimony of a witness given under compulsion of the court, cannot be used against him on a criminal charge, for the reason that he should not have been subjected to such compulsion.

* The rules of evidence are founded in the charities of religion, in the philosophy of nature, in the truths of history, and in the experience of common life.   Per Erskine *arguendo*, Rex *v.* Hardy.   Trial 207-8.

† Pennsylvania constitution, art. 9, § 9.   The accused cannot be compelled to give evidence against himself.