674 A.2d 677

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Samuel G. HAYES, III, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1995.

Decided April 17, 1996.

David M. McGlaughlin, Philadelphia, for Samuel G. Hayes, III.

Mary MacNeil Killinger, Norristown, for Com.

Before NIX, C.J. and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

48

CAPPY, Justice:

The question presented to the Court is whether Article I, Section 9 of the Pennsylvania Constitution provides the "right" to refuse a field sobriety test and, if the Constitution does so provide, is there a concomitant right to be informed thereof? For the reasons that follow we find that Article I, Section 9 of the Pennsylvania Constitution does not provide a "right" to refuse a field sobriety test, and accordingly, that there is no concomitant right to be informed thereof. The order of the Superior Court is affirmed.

The appellant herein was convicted, after a jury trial, of driving while under the influence of alcohol pursuant to 75 Pa.C.S. § 3731(a)(1).[1] The arresting officer testified to observing appellant make an extremely wide right turn onto the lane in which the officer was proceeding in a northerly direction. Appellant, who was proceeding in a southerly direction towards the officer, drove his vehicle in the wrong lane for several car lengths. The appellant pulled into the correct lane before passing the officer. As appellant passed the officer he smiled and waved. The officer turned his car around and followed appellant. Appellant pulled into his driveway and exited the vehicle. The officer approached and requested identification, at which time the officer observed that appellant had difficulty with his balance, his eyes were glassy and bloodshot, his speech was slurred, and he smelled of alcohol. The officer then requested that appellant perform certain field sobriety tests.[2] According to the officer, appel-

1. 75 Pa.C.S. § 3731(a)(1) provides:
   (a) **Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:
   (1) while under the influence of alcohol to a degree which renders the person incapable of safe driving.

2. The tests utilized by the officer were the horizontal gaze nystagmus test, the walk and turn or heel to toe test, and the one leg stand. The horizontal gaze nystagmus test measures the extent to which a person's eyes jerk as they follow an object moving from one side of their field of vision to the other. The walk and turn test requires the person to walk heel to toe along a straight line for nine paces and then pivot and walk

lant was unable to perform the tests and was then placed under arrest for driving under the influence. As stated above, appellant was subsequently convicted on that charge.

Following his conviction, appellant was sentenced to a term of imprisonment of forty-eight hours to twelve months and a fine of $300. The judgment of sentence was affirmed on appeal to the Superior Court. Allowance of Appeal was granted by this Court to address appellant's claim that his constitutional rights were violated when the arresting officer failed to advise him of the right to refuse to perform the field sobriety tests.

■ Appellant asserts that the right to refuse to perform field sobriety tests is encompassed within the right against self-incrimination found at Article I, Section 9 of the Pennsylvania Constitution. Therefore, appellant asserts the police must inform a suspect of the right to refuse to perform the field sobriety tests in accordance with the dictates of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[3]

■ Appellant concedes that the Fifth Amendment to the United States Constitution does not encompass the right to refuse to perform a field sobriety test. The United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), confirmed that the Fifth Amendment protection against self-incrimination is a bar against "communications" or "testimony," not physical evidence which the accused is compelled to produce, even if that physical evidence incriminates the accused. *Id.* at 764, 86 S.Ct. at 1832.

back in the same manner counting the paces aloud. The one leg stand requires the person to stand on one leg with the other leg extended in the air for 30 seconds while counting aloud from one to thirty. (R. at pp. 16–20)

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that an accused be advised of his Fifth and Sixth Amendment rights when in police custody to ensure that any statements made by the accused are not a product of improper custodial interrogation. The police have an affirmative duty to advise a person in custody of his/her right to remain silent and his/her right to counsel and the consequences of forgoing his/her rights. *Id.* at 471, 86 S.Ct. at 1626.

The *Schmerber* Court relied extensively upon the case of *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), wherein the Court found the privilege did not apply when the defendant was asked to put on a particular blouse for the viewing of the witnesses and jury. Mr. Justice Holmes, writing for the Court in *Holt*, rejected the defendant's assertion of privilege as being "based upon an extravagant extension of the 5th Amendment," and further held:

> The prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof.

*Holt*, 218 U.S. at 252–253, 31 S.Ct. at 5–6. Thus, premised upon the rationale from *Holt*, the *Schmerber* Court concluded that, as the right of self-incrimination is not at issue when an accused is compelled to reveal non-testimonial evidence, there is no requirement that the accused be advised of his or her *Miranda* rights before being compelled to reveal the non-testimonial evidence. *Schmerber* at 765, 86 S.Ct. at 1832.

At issue in *Schmerber* were the results of a blood alcohol test. However, the Court made clear that its holding was not limited to blood alcohol tests and in fact extended to various forms of physical and/or physiological testing through which the accused is compelled to produce incriminating evidence, including but not limited to: handwriting exemplars, voice samples, hair, fingerprints, measurements, or even particular gestures. *Id.*[4]

---

**4.** In *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), the Court held that a videotape of a suspect performing field sobriety tests was admissible with the exception of the suspect's answer to one question: the date of his sixth birthday. The Court found that question was distinguishable from the other directives given to the suspect requiring him to perform physical tests, as the question required a testimonial response. The Court specifically declined to address whether the field sobriety tests themselves required the performance of "testimonial acts," as that issue had not specifically been raised on appeal. However, the Court acknowledged that the state

Appellant argues that the textual differences between Article I, Section 9 of the Pennsylvania Constitution, and the Fifth Amendment to the United States Constitution compel a different conclusion regarding the application of the privilege against self-incrimination. Appellant avers that the Pennsylvania Constitution extends a greater degree of protection to its citizens, which encompasses protection against self-incrimination, when an individual is compelled to produce non-testimonial evidence.

■ When resolving a claim for heightened protection under our State Constitution, this Court established in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) a four pronged analysis, which includes a review of the text of the provision at issue, the history of the provision, as developed through legislative enactments and case law, related case law from other jurisdictions and, finally, public policy considerations unique to our Commonwealth. *Edmunds*, 526 Pa. at 390, 586 A.2d at 895. Although it is not mandatory, we find this four pronged test to be quite useful in analyzing state constitutional claims and accordingly, will follow that framework herein.

■ This Court recently reviewed a claim for heightened protection in accordance with the privilege against self-incrimination under Article I, Section 9, as contrasted to the Fifth Amendment, in *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957 (1995). In *Swinehart* the question at issue was whether use and derivative use immunity as provided in 42 Pa.C.S. § 5947, was in conflict with the protection against compelled self-incrimination at Article I, Section 9 of the Pennsylvania Constitution. In resolving that question this Court thoroughly analyzed the development of the Constitutional privilege against self-incrimination in Pennsylvania. In

court below, *see, Commonwealth v. Muniz*, 377 Pa.Super. 382, 547 A.2d 419 (1988), *alloc. denied*, 522 Pa. 575, 559 A.2d 36 (1989), as well as almost all other state courts which had reviewed the question, had specifically found no testimonial privilege attached to field sobriety tests. *Muniz*, 496 U.S. at 603 n. 16, 110 S.Ct. at 2651 n. 16.

reviewing the textual differences between Article I, Section 9, and the Fifth Amendment to the United States Constitution, this Court concluded that neither text indicated a major difference in the description of the privilege itself. *Swinehart,* 541 Pa. at 512, 664 A.2d at 962.[5]

Moving then to the history of the privilege against self-incrimination as it developed in Pennsylvania, the Court in *Swinehart* found a decided preference for interpreting Article I, Section 9, consistent with interpretations of the Fifth Amendment as set forth in decisions of the United States Supreme Court. *Id.,* 541 Pa. at 516, 664 A.2d at 965. The only exception to that general rule was in the area of individual reputation. The Court observed a tradition within Pennsylvania common law for protecting a witness from questions which would damage the witness' reputation.[6] *Swinehart,* 541 Pa. at 517, 664 A.2d at 963. This concern for an individual's reputation is consistent with our long established sense of a heightened awareness of personal privacy in Pennsylvania. *See, Commonwealth v. DeJohn,* 486 Pa. 32, 403 A.2d 1283 (1979), and *Commonwealth v. Shaw,* 476 Pa. 543, 383 A.2d 496 (1978).

However, this commitment to protecting a person's reputation has never surfaced as a concern when the Courts in our Commonwealth have considered requests to compel an accused to reveal evidence of a non-testimonial nature. In *Commonwealth v. Musto,* 348 Pa. 300, 35 A.2d 307 (1944) this Court held that a defendant who raises the issue of his sanity has no constitutional right to refuse compliance with a Court

---

**5.** The specific clauses at issue read as follows:

Article I, Section 9: "[the accused] cannot be compelled to give evidence against himself."

Fifth Amendment: "[No person] shall be compelled in any criminal case to be a witness against himself."

**6.** *See, Commonwealth v. Gibbs,* 3 Yeates 429, 4 U.S. (4 Dall.) 253, 1 L.Ed. 822 (1802), and *Lessee of Galbreath v. Eichelberger,* 3 Yeates 515 (1803). In those cases the Court ruled that a witness could not be forced to answer a question which would expose him to "disgrace or infamy."

ordered physical and psychological examination.[7] In *Commonwealth v. Aljoe*, 420 Pa. 198, 216 A.2d 50 (1966) the Court found no constitutional right to refuse to appear in a line-up. The use of a defendant's clothing and results of blood analysis were admissible over objection that they were subject to protection under the privilege against self-incrimination in *Commonwealth v. Gordon*, 431 Pa. 512, 246 A.2d 325 (1968). In *Commonwealth v. Jefferson*, 445 Pa. 1, 281 A.2d 852 (1971), this Court stated that fingerprints are non-testimonial evidence which is not protected by the constitutional privilege against self-incrimination. *See also, Commonwealth v. Fernandez*, 333 Pa.Super. 279, 482 A.2d 567 (1984) (a defendant can be compelled to shave his beard for identification by a witness); and *Commonwealth v. Deren*, 233 Pa.Super. 373, 337 A.2d 600 (1975) (use of hair samples does not violate constitutional privilege against self-incrimination).

Absent from the above noted decisions of our Court is a concern for the reputation of the accused when compelled to produce physical evidence. Admittedly the individual stopped and asked to perform a field sobriety test may experience a concern about his or her reputation arising from this type of police encounter. However, the effect upon an individual's reputation in being asked to perform a field sobriety test can not be any greater than the effect of being compelled to submit to a physical or psychological examination, appearance in a line-up, fingerprinting, blood tests, requests to shave, or, to produce hair samples. Thus, no rational basis exists to extend the concept of protection of reputation to a conclusion that a citizen has a right inherent in our historical interpretation of Article I, Section 9, to refuse to perform a field sobriety test.

In keeping with our analytical framework as developed in *Edmunds*, we now turn to a review of the decisions of our sister states on this matter. In our research we located only one jurisdiction, Oregon, which does require a warning before

---

7. *Accord, Commonwealth v. Kampo*, 480 Pa. 516, 391 A.2d 1005 (1978) (although a defendant must submit to a Court ordered psychological examination he cannot be compelled to answer questions).

an officer may request a suspect perform field sobriety tests. The Oregon decision in *State v. Dill*, 127 Or.App. 6, 870 P.2d 851 (1994), however, is predicated upon an Oregon statute, ORS 813.135, which provides:

> any person who operates a motor vehicle upon premises open to the public or the highways of the state shall be deemed to have given consent to submit to field sobriety tests upon the request of a police officer for the purpose of determining if the person is under the influence of intoxicants if the police officer reasonably suspects that the person has committed the offense of driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance. Before the tests are administered, the person requested to take the tests shall be informed of the consequences of refusing to take or failing to submit to the tests under ORS 813.136. ORS 813.136 provides: If a person refuses or fails to submit to field sobriety tests as required by ORS 813.135, evidence of the person's refusal or failure to submit is admissible in any criminal or civil action or proceeding arising out of allegations that the person was driving while under the influence of intoxicants.

*Dill*, 127 Or.App. at 8 n. 1, 870 P.2d at 851, n. 1. In *Dill*, the Court noted that the warnings as required by the statute set forth above, are not *Miranda* warnings and that a field sobriety test is not an encounter that would require *Miranda* warnings before the tests were administered. The Oregon Court made a distinction between *Miranda* warnings and the "informed consent" warnings that are required by the Oregon statute set forth above. *See, State v. Schaffer*, 114 Or.App. 328, 835 P.2d 134 (1992) (a request to perform field sobriety tests does not create inherently compelling circumstances for *Miranda* purposes, as a matter of law).

We note that the Appellant relies upon the case of *People v. Ramirez*, 199 Colo. 367, 609 P.2d 616 (1980). However, the Colorado Supreme court overruled *Ramirez* in relevant part in *People v. Archuleta*, 719 P.2d 1091 (Colo.1986), to specifically declare that *Miranda* warnings were not applicable to field

sobriety tests. In so ruling Colorado joined with all of our sister states that have addressed this issue.

All other jurisdictions which have addressed this particular issue hold that field sobriety tests are non-testimonial in nature and, thus, do not fall within the protective sphere of the privilege against self-incrimination. To date the Courts which have specifically found that the privilege against self-incrimination does not apply to field sobriety tests are: *Stone v. City of Huntsville,* 656 So.2d 404 (Ala.1994); *Coates v. State,* 216 Ga.App. 93, 453 S.E.2d 35 (1994); *Allred & DiAndrea v. State,* 622 So.2d 984 (Fla.1993) (No *Miranda* warnings are required before requesting performance of field sobriety tests, with the exception of asking a suspect to say the alphabet backwards; the Court specifically found that test to require a testimonial response); *State v. Zummach,* 467 N.W.2d 745 (N.D.1991); *State v. Erickson,* 802 P.2d 111 (Utah 1990); *McAvoy v. State,* 314 Md. 509, 551 A.2d 875 (1989); *Dixon v. State,* 103 Nev. 272, 737 P.2d 1162 (1987); *People v. Boudreau,* 115 A.D.2d 652, 496 N.Y.S.2d 489 (1985); *State v. Lombard,* 146 Vt. 411, 505 A.2d 1182 (1985); *Commonwealth v. Brennan,* 386 Mass. 772, 438 N.E.2d 60 (1982); *Trail v. State,* 526 S.W.2d 127 (Tenn.Crim.1975); *State v. Arsenault,* 115 N.H. 109, 336 A.2d 244 (1975); *Flynt v. State,* 507 P.2d 586 (Okl.Crim.1973); *Heichelbech v. State,* 258 Ind. 334, 281 N.E.2d 102 (1972); *State v. Strickland,* 276 N.C. 253, 173 S.E.2d 129 (1970); *Whalen v. Alhambra,* 274 Cal.App.2d 809, 79 Cal.Rptr. 523 (1969); *State v. Faidley,* 202 Kan. 517, 450 P.2d 20 (1969); *City of Mercer Island v. Walker,* 76 Wash.2d 607, 458 P.2d 274 (1969); *People v. Krueger,* 99 Ill.App.2d 431, 241 N.E.2d 707 (1968); *City of Piqua v. Hinger,* 15 Ohio St.2d 110, 44 O.O.2d 81, 238 N.E.2d 766 (1968); and *State v. Corrigan,* 4 Conn.Cir. 190, 228 A.2d 568 (1967).

In reviewing the decisions of our sister states we find unanimous agreement on the classification of field sobriety tests as non-testimonial (with the exception in *Allred* for recitation of the alphabet backwards). Naturally following from the conclusion that field sobriety tests are non-testimonial, our sister states have unanimously declared that no *Mi-*

*randa* warnings are required before a police officer may request a suspect perform a field sobriety test. We find the reasoning of our sister states logically persuasive. In fact, we note with approval the decisions of our Superior Court which have adopted and followed the rationale of our sister states on this issue. *See, Commonwealth v. Ragan,* 438 Pa.Super. 505, 652 A.2d 925 (1995); *Commonwealth v. Romesburg,* 353 Pa.Super. 215, 509 A.2d 413 (1986); *Commonwealth v. Benson,* 280 Pa.Super. 20, 421 A.2d 383 (1980); and *Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375 (1974).[8]

Finally, we turn to a consideration of any public policy concerns unique to our Commonwealth which would require a departure from the analysis offered by the United States Supreme Court and our sister states on the issue at bar. Appellant urges this Court to reconsider the traditional delineation of testimonial versus non-testimonial evidence which was formulated by the United states Supreme Court as early as 1910 in the decision of *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). The impetus for change, according to appellant, is the great advances which have occurred in scientific evidence and analysis, such as DNA testing. Appellant argues that the evidence produced by scientific means is now so overwhelmingly incriminating that defendants should be apprised of their constitutional rights before they are forced to submit to testing where the results will irrefutably link them to the criminal actions under investigation. Appellant argues that as a society we must reconsider our position that it is acceptable to force a person to incriminate himself by physical evidence but not acceptable when the force is used to extract communicative evidence. Appellant urges this Court to extend the protection against self-incrimi-

8. We also note with approval the decision of the Superior Court in *Commonwealth v. Conway,* 368 Pa.Super. 488, 534 A.2d 541 (1987), where the Court distinguished the physiological aspects of a field sobriety test which merely require a driver to exhibit physical coordination from an interrogation which would necessitate a response of a testimonial nature. The Court in *Conway* carefully analyzed the encounter in that case and affirmed the trial court's suppression of the defendant's statements made during the sobriety tests which were clearly testimonial in nature.

nation to any form of evidence which derives from the individual as a "whole being."

Appellant's position is not persuasive as a matter of policy. We find no reasonable basis for abandoning the clearly understandable delineation between testimonial and non-testimonial evidence which the overwhelming majority of jurisdictions have traditionally followed when enforcing the privilege against self-incrimination to shield an accused from improper police coercion. We find the reasoning of Mr. Justice Holmes in the case of *Holt* to be as valid today, even in the light of great scientific advances, as it was in 1910. To follow the arguments advanced by appellant would be as "extravagant an extension" of the right against self-incrimination as Mr. Justice Holmes warned of in *Holt.* The constitutional protection against self-incrimination historically, and for valid cause, endures because our Courts have maintained steadfast adherence to the ancient principle that no man shall be condemned by his own words. *Swinehart* 541 Pa. at 522, 664 A.2d at 967. We decline appellant's invitation to enter a new age and expand this ancient adage to now proclaim that no man shall be condemned by his inability to walk a straight line.

Further, considering the nature of the invasion at issue, requesting a suspect to perform field sobriety tests, we find the intrusion to be minimal in light of the objective for the intrusion, removing impaired drivers from the highway. We also note that although appellant asserts that the request to perform a field sobriety test is "compelling" a suspect to produce evidence against himself, we find no legislative requirement that would compel a suspect to comply with a request for a field sobriety test, such as the implied consent law which penalizes a driver who refuses to submit to blood alcohol or breathalyzer testing.[9] In fact, were we to adopt the position advocated by appellant the ensuing flood of litigation concerning the admissibility of routine physical evidence would be overwhelming. Accordingly we find no compelling policy

9. See, the Implied Consent Law, at 75 Pa.C.S. § 1547(b)(1), which exposes a motorist to the loss of driving privileges upon refusal to submit to blood alcohol or breathalyzer testing.

58

considerations which would justify an expansion of the protection of Article I, Section 9 of the Pennsylvania Constitution to mandate *Miranda* warnings prior to a request to perform a field sobriety test.

Thus, having fully considered appellant's constitutional challenge, we affirm the order of the Superior Court.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this matter.