**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Sarwer ABBAS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 26, 2004.

Filed Oct. 29, 2004.

---

Sarwer Abbas, Appellant, Pro Se.

Ann Targonski, Asst. Dist. Atty., Sunbury, for Com., Appellee.

Before: KLEIN, POPOVICH and JOHNSON, JJ.

KLEIN, J.:

¶ 1 Sarwer Abbas appeals from the judgment of sentence entered in the Court of Common Pleas of Northumberland County. Following trial, a jury concluded that Abbas knowingly engaged in sexual intercourse with a 15 year-old female. Abbas was convicted of statutory sexual assault, aggravated indecent assault and indecent assault, and sentenced to 14–48 months' imprisonment. Because we find Abbas' claims either waived or meritless, we affirm.

**Facts**

¶ 2 Abbas first "talked" with the victim in 1998 in an Internet chat-room named "Teentalk." In June or July of that year, Abbas began calling the victim at home each evening. The victim testified that during one conversation she told Abbas that she was 15 years old and in the ninth grade. The victim also sent the defendant a photograph of herself, which had her age (15) and grade (8) written on the back. The two met in February 1999, and again in March 1999. On March 7, 1999 Abbas visited the victim. They went into her basement and the victim gave Abbas a second, larger photo of herself (this photo did not have information about the victim's age on the back). Abbas then took the victim back to his car and the two had sexual intercourse.

¶ 3 After a confrontation with her mother, the victim went to the hospital and submitted to a rape kit. She also filed a police report. In June, police in neighboring Montour County contacted Northumberland police, stating that they had an individual in custody meeting Abbas' description. A Northumberland police officer went to Montour County to meet with Abbas. The officer read Abbas his rights, and Abbas signed a form indicating that he understood his rights, but he did not sign a written waiver.

¶ 4 The officer interviewed Abbas and Abbas admitted to having a sexual encounter with the victim. The officer also asked Abbas whether he had any pictures of the victim. Abbas produced the two photographs given to him by the victim. The first picture had the victim's name and "grade 8, age 15" written on the back (Commonwealth Exhibit 1); the second picture had nothing written on the back.

¶ 5 At trial, the court suppressed Abbas' statement on the grounds that Abbas did not waive his *Miranda*[1] rights. The court, however, refused to suppress the photographs, reasoning that the inevitable discovery rule rendered them admissible. The jury convicted Abbas of statutory sexual assault, indecent assault and aggravated indecent assault. Abbas filed a post-sentence motion for a new trial and an arrest of judgment, arguing: 1) the verdict was against the weight of the evidence; 2) the verdict was contrary to the weight of the evidence; 3) the verdict is contrary to the law; 4) the court erred in refusing to permit rehearing on omnibus pretrial motions; 5) the court erred in refusing to suppress evidence, including DNA and photographs; and 6) ineffectiveness of counsel. After reviewing the record, Ab-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

bas filed a second motion raising additional claims regarding ineffectiveness of counsel.

¶ 6 At a hearing in May 2003, the trial court denied Abbas' post-sentence motion. Abbas filed a notice of appeal and complained of the same matters raised in the post-sentence motion. He also argued that the court erred when it failed to dismiss the aggravated indecent assault charge, claiming such a charge could not be sustained as a result of his conviction for indecent assault. Last, Abbas raised three additional claims of ineffectiveness of counsel. In July 2003, Abbas' attorney withdrew from the case, and Abbas proceeded *pro se* and *in forma pauperis* for the remainder of the action.

¶ 7 Abbas has addressed a number of issues in his appellate brief that he neither preserved in the trial court nor raised in his 1925(b) statement. Conversely, Abbas failed to address in his brief many of the issues raised in his 1925(b) statement. As a result, we find Abbas' first three issues waived. *See* Pa.R.A.P. 302(a); *see also Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998).

¶ 8 With respect to the issues preserved for appeal, Abbas argues that the trial court erroneously refused to suppress photographs obtained during an unlawful interrogation, that the court erred in refusing to hear pretrial motions, and that trial counsel was ineffective.

**Discussion**

**1. Suppression of photographs**

¶ 9 Abbas argues the photographs are "fruit of the poisonous tree" and therefore

inadmissible at trial. *See Commonwealth v. Brown,* 700 A.2d 1310 (Pa.Super.1997). On June 28, 2004, the United States Supreme Court decided *U.S. v. Patane,* —— U.S. ——, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004). Justice Thomas, who announced the judgment of the Court, joined by Chief Justice Rehnquist and Justice Scalia, upheld the admissibility of physical evidence obtained as the result of an unwarned but voluntary statement. The plurality held that the fruits doctrine does not apply to derivative *physical evidence* obtained through an illegal statement, *id.* at 2629–2630, reasoning that "exclusion of unwarned statements is a complete and sufficient remedy for any perceived *Miranda* violation." *Id.* at 2626. Justice Kennedy concurred, joined by Justice O'Connor, and agreed with the plurality that "[a]dmission of nontestimonial physical fruits ... does not run the risk of admitting into trial an accused's coerced incriminating statements against himself." *Id.* at 2361. Justice Kennedy would find it unnecessary to decide whether failure to give full *Miranda* warnings should be characterized as a violation of the *Miranda* rule itself, or whether there is "anything to deter," so long as the unwarned statements are not later introduced at trial." *Id.*[2]

¶ 10 Currently, there is no precedent in this Commonwealth indicating that the Pennsylvania Constitution extends greater protection than its federal counterpart with respect to the Fifth Amendment right against self-incrimination in the context of

---

**2.** Justice Souter dissented, stating the Fifth Amendment privilege against compelled self-incrimination extends to the exclusion of derivative evidence. *124 S.Ct. at 2632.* Justice Souter declared that finding the fruit of the poisonous tree doctrine does inapplicable to derivative nontestimonial evidence creates an "unjustifiable invitation to law enforcement officer to flout *Miranda* when there may be

physical evidence to be gained." Justice Stevens and Justice Ginsburg joined in that dissent. Justice Breyer dissented as well, agreeing with Justice Souter's position that the fruit of the poisonous tree doctrine should be applied to exclude physical evidence derived from unwarned questioning "unless the failure to provide *Miranda* warnings was in good faith." *Id.*

physical evidence obtained as a result of or during the course of an unwarned statement. We find *Patane* instructive here.[3] Accordingly, until our Supreme Court has the occasion to conduct an independent analysis, we are persuaded by the reasoning in *Patane*.[4]

¶ 11 The "[F]ifth [A]mendment privilege against self-incrimination protects any individual from being officially coerced to give testimonial evidence which would be incriminating in the sense of furnishing a link in the chain of evidence needed to prosecute." *Commonwealth v. Kopicz*, 840 A.2d 342 (Pa.Super.2003) (quoting *Commonwealth v. Moore*, 400 Pa.Super. 151, 583 A.2d 1, 3 (1990)). Before *Patane*, the trial court's failure to suppress photographs obtained during an unlawful interrogation would arguably have constituted reversible error. Evidence is "fruit of the poisonous tree" and thus subject to suppression if the evidence comes to light by way of exploitation of the illegality and was generally inadmissible at trial. *See Commonwealth v. Brown*, 700 A.2d 1310 (Pa.Super.1997) (citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963)). *Compare Brown, supra* ("fruit of the poisonous tree" doctrine generally requires exclusion of evidence obtained from, or acquired as consequence of, lawless official acts) with *Commonwealth v. Hayes*, 544 Pa. 46, 674 A.2d 677 (1996) (the privilege against self-incrimination under Article 1, section 9 of Pennsylvania Constitution is not a bar against physical, non-testimonial evidence which an accused is compelled to produce; no compelling policy considerations that would justify requiring *Miranda* warnings prior to request to perform field sobriety test). If the discovery of evidence can be traced to a source independent of the initial illegality, however, suppression is not mandated. *See Commonwealth v. Ariondo*, 397 Pa.Super. 364, 580 A.2d 341, 347 (1990) (the fruit of the poisonous tree doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts; it does not exclude evidence obtained from an independent source).[5]

3. Though a plurality decision, the majority of the Justices agreed that introduction of non-testimonial derivative evidence does not implicate the Self–Incrimination Clause of the Fifth Amendment.

4. The Fifth Amendment states, in relevant part: "No person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. The Fifth Amendment privilege applies to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The Pennsylvania Constitution contains a similar provision, as do Pennsylvania statutes. *See* Pa. Const. Art. I, § 9 (the accused "cannot be compelled to give evidence against himself"); 42 Pa.C.S.A. § 5941(a). A comparison of the actual language in Article I, Section 9 and the Fifth Amendment does not reveal any major differences in the description of the privilege against self-incrimination within the two Constitutions. Pennsylvania's constitutional privilege offers somewhat greater protection than the federal privilege in the context of Pennsylvania's immunity statute. *See Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957, 969 (1995). The only privilege asserted here is the federal one; Abbas does not argue that Pennsylvania's Constitution offers greater protection than the Fifth Amendment. *See Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (in case implicating provision Pennsylvania Constitution, litigants should brief and analyze, at minimum, text of Pennsylvania constitutional provision, history of provision, including Pennsylvania case law, related case law from other states, and policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence). Abbas has not made this argument to this Court nor mentioned Pennsylvania's constitutional provision.

5. The fruit of the poisonous tree doctrine does not exclude evidence obtained from an "independent source." *Ariondo, supra*. Because

¶ 12 In *Patane,* the defendant was unlawfully interrogated. During the course of this interrogation, the detective asked the defendant about a gun about which the detective had received information. 124 S.Ct. at 2625. The defendant expressed his unwillingness to talk about the gun, but the detective persisted. Eventually, the defendant revealed that the gun was hidden in his bedroom. The Court concluded that, despite, the illegality of the statement, the physical evidence was admissible. *Id.* at 2630. The Court stated: "Introduction of the nontestimonial fruit of a voluntary statement, such as respondent's pistol, does not implicate the [Self–Incrimination] Clause. It presents no risk that defendant's coerced statements (however defined) will be used against him at a criminal trial." *Id.*

■ ¶ 13 The case before us is analogous. Here, police read Abbas his *Miranda* rights and Abbas signed a form indicating that he had been read his rights, but he never signed a valid waiver. During the interrogation police took a statement from Abbas and they asked Abbas whether he had any pictures of the victim. Abbas produced the two photographs at issue. Abbas argued the photographs were obtained as a result of an interview of which there was no valid waiver of *Miranda* rights and, therefore, the photographs were inadmissible as fruit of the poisonous tree. The trial court suppressed Abbas' statements, but refused to suppress the photographs, relying on the independent source doctrine as an exception to the fruits doctrine. Our reading of *Patane* indicates that the doctrine is not

applicable to non-testimonial or derivative physical evidence absent an actual coerced statement, and the exclusion of Abbas' statement was a "complete and sufficient remedy" for the *Miranda* violation. 124 S.Ct. at 2626. We conclude, therefore, that the photographs were admissible at trial.

## 2. Refusal to Hear Omnibus Pre-trial Motions

■ ¶ 14 Abbas also argues that the court erred in refusing to hear his pretrial motions. Abbas was a fugitive at the time of the pretrial hearing. Because he failed to appear, the court dismissed the motion. Moreover, any error that may have occurred in failing to rule on Abbas' motion to relist the motion was harmless because the issues raised in the pretrial motion, in particular the issues of suppression of Abbas' statements and the photographs, were thoroughly addressed and resolved at trial. Accordingly, because the issues raised in the pre-trial motion were ultimately resolved at trial, this court finds no error.

## 3. Ineffectiveness of Counsel

¶ 15 Last, Abbas argues counsel was ineffective for failing to properly prepare and file pretrial motions and failing to object to admission of DNA and photographs.[6] These claims are meritless.

■ ¶ 16 Generally, claims of ineffectiveness of trial counsel cannot be considered on direct appeal and must await collateral review. *See Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). However, an exception to this rule, set forth in *Commonwealth v. Bomar,* 573 Pa.

we find that the fruits doctrine is not applicable here under *Patane,* we do not review the trial court's use of the "independent source" doctrine as its basis for admission of the photographs.

6. Abbas raised four other claims of ineffectiveness on appeal and in his post-sentence motions, but they were not pursued at the hearing. The trial court did not address them and this Court will postpone review of those claims pursuant to *Grant, supra.*

426, 826 A.2d 831 (2003), permits an appellant to raise ineffectiveness of counsel on direct appeal when the claim was properly preserved and addressed in the trial court. Here, like in *Bomar*, this Court has the benefit of the trial judge's evaluation of trial counsel's conduct in reviewing the claims, rendered close in time to the trial, and the record of the hearing on those claims. Counsel testified at that hearing on Abbas' post-sentence motions concerning his versions of events at trial, trial strategy, and his reasons for the actions or inactions that Abbas now claims amounted to ineffectiveness. (N.T., Post–Sentence Motions, 5/28/03 at pp. 5–20).

¶ 17 To prove ineffectiveness of counsel, an appellant must show (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate the appellant's interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceeding would have been different. *See Commonwealth v. Wharton*, 571 Pa. 85, 811 A.2d, 978, 986 (2002). Trial counsel is presumed to be effective unless an appellant proves otherwise. *See Commonwealth v. Williams*, 524 Pa. 218, 570 A.2d 75, 81 (1990).

¶ 18 Abbas argues Richard Feudale, Abbas' trial counsel, was ineffective by failing to prepare and file pretrial motions and failing to object to admission of evidence. First, the court concluded that Feudale took all the necessary steps in preparing and filing Abbas' pretrial motions. Additionally, when the court dismissed the pretrial motion due to Abbas's failure to appear, Mr. Feudale filed a motion to Re-list and Consider Defendant's Pretrial Motion. The court denied this motion, but at trial, Feudale raised the same issues at trial and successfully persuaded the court to suppress Abbas' confession on the grounds that police violated his Fifth Amendment right.

¶ 19 The trial court also concluded that Feudale was not ineffective when he failed to challenge the admission of certain evidence. With regard to the DNA evidence, Feudale was not ineffective when he failed to challenge its admissibility, because the evidence did not affect the defense's trial strategy. The DNA evidence proved that the sexual encounter between Abbas and the victim had taken place, a fact that Abbas did not deny. Because Abbas' defense focused on mistake of age, the admission of evidence of the sexual encounter did not affect the strength of his case.

¶ 20 Additionally, the trial court found that Feudale was not ineffective by failing to object when the prosecution presented the pictures to the jury, because he did not want to call attention to the ages written on the back. Feudale believed that the fact that the smaller picture had the victim's age and grade at the time the picture was taken was damaging to Abbas' defense. His choice not to object, therefore, was a strategical choice and not an oversight. The court reasoned that, pursuant to *Wharton*, because Feudale had a reasonable basis for his conduct, this was enough to withstand Abbas' ineffectiveness claims.

¶ 21 After an independent review of the transcripts and the trial court's opinion, we find no error in the trial court's assessment of Abbas' ineffectiveness claims.

¶ 22 Judgment of sentence affirmed.