COMMONWEALTH of Pennsylvania, Appellant

v.

Rafael THEVENIN, Appellee.

Superior Court of Pennsylvania.

Argued Feb. 26, 2008.

Filed May 8, 2008.

Grady Gervino, Asst. Dist. Atty., for Com., appellant.

George Newman, Philadelphia, for appellee.

BEFORE: KLEIN, GANTMAN and ALLEN, JJ.

OPINION BY KLEIN, J.:

¶ 1 The Commonwealth appeals the trial court's order suppressing drugs found in a house after Defendant Rafael Thevenin agreed to disclose the location of the drugs when confronted with a search warrant and a police statement that he could avoid a destructive search of the house by revealing where the drugs were located. The trial court held that because Thevenin was not given his *Miranda*[1] warnings, learning of the location of the stash was

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the fruit of an improper statement. The Commonwealth asserts that while any statement Thevenin made in response to the police is properly suppressed, the physical evidence discovered is not. We agree with the Commonwealth and reverse.

¶ 2 Following *Commonwealth v. Abbas,* 862 A.2d 606 (Pa.Super.2004) and *United States v. Patane,* 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004), merely because a *voluntary* statement was not preceded by *Miranda* warnings does not require the suppression of physical evidence found pursuant to the statement. Also, we will not upset the trial court's determination that under the circumstances the discovery of the drugs would not have been inevitable.

¶ 3 A full discussion follows.

**Facts**

¶ 4 Starting in February 2005, officers of the Police Narcotics Unit took up surveillance on the 200 block of Cornwall Street. They saw Thevenin[2] approach a car in which John Hernandez and Tanya Cerelli were sitting, and saw Thevenin give Cerelli a small, five-inch-by-five-inch black bag. The officers could not see the contents. Soon afterwards, a confidential informant purchased crack cocaine from Hernandez and Cerelli. A similar situation with the passage of the bag took place twice more in February. Hernandez and Cerelli were arrested and found with large quantities of crack cocaine, currency and firearms.

¶ 5 Slightly less than one month after the last transfer of a black bag, the officers conducted a "trash pull" in front of 2303 East Cambria Street and recovered a bag with cocaine residue and other baggies

similar to those in which the drugs found to be Hernandez's and Cerelli's. The water bill for the residence was in Thevenin's name. Armed with this information, the officers obtained a search warrant for 2303 East Cambria Street, arrested Thevenin without a warrant at a different location and transported him back to 2303 East Cambria Street where the warrant was being executed. Although he had been arrested, Thevenin had not been read the *Miranda* warnings.

¶ 6 When at the house, the officers told him they had a search warrant and were going to start taking the property apart looking for narcotics until they found some. Rather than having his house torn apart, Thevenin told the officers how to find the drugs.

¶ 7 The drugs were concealed with an elaborate mechanism in a child's room on the second floor. By means of a stepladder behind the door, when one put a magnet on two dots on a lighting fixture, the fixture descended, revealing the hiding place.

1. **The propriety of the discovery of the drugs after a non Mirandized statement.**

¶ 8 It is conceded that no *Miranda* warnings were given to Thevenin before he was asked if he wanted the police to do a full search of the house or if he wanted to reveal where the drugs were hidden. It is further conceded by the Commonwealth that the statement about the location was inadmissible. However, case law indicates that these concessions do not require the suppression of the tangible objects discovered in the search.

---

**2.** Thevenin was not actually identified until later. The police observed Thevenin arrive at his meetings with John Hernandez and Tanya Cerelli in a white Toyota Camry. From the license plate, the police identified a person named Rafael Thevenin as the owner, but the police were not initially certain that the person in the car was Thevenin.

¶ 9 Preliminarily, we note that we want to encourage the police to give a defendant or others that live with a defendant the opportunity to avoid a major disturbance to his or her house prior to an invasive search. Of course, nothing about this encouragement is lessened if the police gave the *Miranda* warnings prior to the request. We are simply noting that the prevention of unnecessary disturbance or destruction of property is a proper goal. The U.S. Court of Appeals for the Ninth Circuit noted this same goal in *United States v. Crespo de Llano*, 838 F.2d 1006 (9th Cir.1988).

¶ 10 Although *Crespo de Llano* was decided under Fifth Amendment principles, the federal court nonetheless realized that police, when possessing a valid search warrant, have the inherent power to search for contraband that has been hidden. While some criminals leave the evidence of their wrongdoing in plain view, not all criminals are so accommodating. The law recognizes this fact and allows the police fair latitude in searching for hidden contraband. Statements such as the one in question here inform the person affected by the search of that latitude and offer that person the opportunity to avoid the disturbance of the property that is otherwise allowed by the law. Giving a suspect this opportunity strikes us as laudatory policy rather than requiring the police to hold their tongues and letting the chips fall as they may.[3]

¶ 11 While policy favors allowing the police to give the defendant the opportunity to cooperate and avoid possible property destruction, the more important aspect of the issue is whether a *Miranda* warning is required prior to offering the opportunity to cooperate and what happens if a *Miranda* warning is not given prior to the offer.

¶ 12 The trial court determined that the fruit of the search would not have been discovered absent the statement made by Thevenin in response to the offer. Because the statement was made prior to a *Miranda* warning, the drugs that were discovered were the fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). This analysis does not address the effects of *United States v. Patane*, 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004); *Commonwealth v. Hayes*, 544 Pa. 46, 674 A.2d 677 (1996); and *Commonwealth v. Abbas*, 862 A.2d 606 (Pa.Super.2004).

¶ 13 The United States Supreme Court announced in *Patane* that as long as the non-*Miranda* statement was voluntary, the non-testimonial evidence found as a result of the statement was not subject to suppression. The Supreme Court noted that voluntary in this context meant not actually coerced.

¶ 14 In *Hayes*, our Supreme Court recognized the distinction between testimonial and non-testimonial evidence as it relates to self-incrimination. In essence, *Hayes* recognized that non-testimonial evidence (in *Hayes*—a field sobriety test) was not subject to suppression due to a failure to give a *Miranda* warning.

¶ 15 In *Abbas*, a panel of our Court applied the lessons of *Patane* to Pennsylvania law and similarly determined, based in part on the historic differences between testimonial and non-testimonial evidence, that where the statement is voluntary even though not pursuant to a *Miranda* warning, the statement itself is subject to sup-

---

**3.** The unfortunate reality of the situation is that only the person with guilty knowledge can take advantage of the opportunity.

pression, but the non-testimonial evidence derived from the statement is otherwise admissible.

■ ¶ 16 Thus, the remaining question before us is whether the statement divulging the location of the drugs was voluntary. We return momentarily to our discussion of policy. There is a proper motive for asking if the suspect wishes to cooperate—there is nothing wrong with giving a person the opportunity to avoid the unnecessary disturbance or destruction of property. This cannot be the sole basis for determining whether the statement was coerced as that would represent improper circular logic. Nonetheless, it is certainly a factor for consideration.

¶ 17 In *Crespo de Llano*, the Ninth Circuit noted that giving a property owner the opportunity to avoid a destructive search did not actually convey a threat. Rather, the police are stating a simple fact. Pursuant to a valid search warrant, the police are authorized to thoroughly search a property, which may well entail ceilings, walls, floors and/or stairs. This is not a situation, for example, where the police are threatening a person with actions that they have no authority to undertake. There are no suggestions of physical coercion or threats of violence to the person. There is no suggestion that the police will otherwise harass the suspect's family.[4] Rather than a threat, this is a statement of fact regarding the limits of authority of the police and an opportunity to avoid the full exercise of that authority.[5]

¶ 18 Therefore, we do not agree with the trial court that in addition to not allowing the use of the statement advising the police where the drugs were located, the drugs themselves needed to be suppressed.

## 2. The "inevitable discovery"[6] of the drugs.

¶ 19 Because we decide this case on the legal grounds found in *Patane, supra,* and *Abbas, supra,* the inevitability of discovery is not relevant. However, considering the elaborate mechanism used to hide the drugs, it is far from clear that the police would have found this hiding place.[7] It would be difficult to say that it was an abuse of discretion for the trial judge to conclude that the drugs would not have been found. In essence, the Commonwealth here is asking our Court to substitute our judgment for that of the trial court. We will not do that.

## 3. The propriety of the search warrant.

■ ¶ 20 Thevenin has claimed that the warrant was invalid because there was insufficient probable cause stated within the four corners of the document. This issue

4. This is not meant to be an exhaustive list of activities that may suggest illegal coercion of a statement.

5. We note that this resolution at least implies a good faith response by the police. If a person affirmatively responds to the opportunity to save his or her property from a destructive search by the police, then it would seem that the police should refrain from conducting a destructive search despite the cooperation. What would happen if the police did not refrain from a subsequent destructive search is not before us and this decision does not address that possibility.

6. We note that there is some confusion between application of the "inevitable discovery" rule and the "independent source" rule. *See Commonwealth v. Wiley,* 588 Pa. 391, 904 A.2d 905 (2006) Newman, Justice (dissenting).

7. While the trial court did not believe in the inevitable discovery of the drugs, Thevenin apparently did. There is no particular reason to believe that Thevenin would have cooperated absent a belief that the search would prove destructive and successful.

is not properly before us. The trial court ruled in favor of the Commonwealth on this issue, determining that there was sufficient probable cause within the four corners of the warrant. Thus, it is the defendant who was aggrieved by the ruling, not the Commonwealth. Procedurally, an appeal by a defendant from an adverse suppression ruling is not heard until after sentencing. Thus, the issue is interlocutory. While it might be sensible to address all suppression issues at one time, this issue was not placed before the trial court and was not addressed in the trial court's Pa.R.A.P.1925(a) opinion. Further, the issue was not certified for interlocutory appellate review.

¶ 21 This issue may be raised in the event that Thevenin is convicted and a post-sentence appeal is filed.

¶ 22 Order suppressing evidence reversed. Case remanded for trial. Jurisdiction relinquished.