**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Arnaldo Torres SANTIAGO, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 2009.

Filed Aug. 28, 2009.

Samuel C. Stretton, West Chester, for appellant.

Todd M. Mosser, Asst. Dist. Atty., Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, SHOGAN, JJ., and McEWEN, P.J.E.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, Arnaldo Torres Santiago, appeals from the judgment of sentence entered following his convictions of first degree murder, possessing an instrument of crime ("PIC"), and two counts of violating the Uniform Firearms Act ("VUFA").[1] Appellant challenges, *inter alia,* the admission of the murder weapon and a witness statement obtained as a result of Appellant's suppressed confession to police. We affirm.

¶ 2 The trial court aptly summarized the facts of this case as follows:

During the early morning hours of April 23, 2006, John Reed was at the home of Omar Rodriquez[, the victim,] located at 2912 Ella Street in the City and County of Philadelphia. Around 2:00am Reed saw Omar and [Appellant] arguing in the dining room about a thirty-eight revolver. [Appellant] began cursing at Omar in Spanish. [Appellant] and Omar were still downstairs when

---

1. 18 Pa.C.S.A. §§ 2502, 907, 6106 and 6108.

Reed headed to an upstairs bedroom to go to sleep at approximately 5:00am.

Around 8:15am Caesar Sanchez, a neighbor who lives across the street from the Rodriquez home, was drinking coffee when he heard two bangs that he thought were firecrackers. Sanchez saw [Appellant] leave Omar's home and walk down the street. Sometime later that day, [Appellant] went to the home of Samuel Gonzalez Rosario to ask if Rosario could hold a thirty-eight revolver for him until he could return to pick it up. Rosario agreed to hide the gun.

[Omar] died from a gunshot wound to the head and he also sustained a gunshot wound to the right pinky finger and a graze wound to the left wrist.

Trial Court Opinion, 7/16/08, at 1–2 (citations omitted).

¶ 3 As part of their investigation, police questioned Appellant at the police station as a potential witness. Appellant was not given *Miranda* warnings[2] because originally he was not a suspect. Initially, Appellant told police about the time frame regarding the night in question, but denied any knowledge of the crime. Several hours later, police returned to the room where Appellant was detained to clarify Appellant's statement regarding the time frame. At that point, Appellant blurted out, "I did it!" Appellant was then given his *Miranda* warnings. Appellant confessed and told the police where the murder weapon was located.

¶ 4 Appellant filed a motion to suppress his confession and the gun. After a hearing, the trial court determined that Appellant's confession should be suppressed because Appellant was in custody and *Miranda* warnings were necessary before questioning. However, the trial court concluded that the gun was admissible because physical evidence derived from the confession did not implicate Appellant's testimonial right against self-incrimination. On December 12, 2007, following a non-jury trial, Appellant was convicted of the crimes specified above. On that same day, the trial court sentenced Appellant to a term of life in prison on the murder conviction and concurrent terms of incarceration on the remaining convictions. Appellant's post-sentence motion challenging the weight of the evidence was denied. This appeal followed.

¶ 5 Appellant presents the following issues for our review:

1. Was the verdict against the weight of the evidence and was the evidence insufficient to support the verdict?

2. Did the Honorable Benjamin Lerner err, when after suppressing the statement of [Appellant] on the basis of [ ] *Miranda* violations, he still allowed the Commonwealth to produce the witness and alleged murder weapon which were discovered as the result of the now suppressed statement? Should all evidence flowing from the illegally taken statement have been suppressed? Did this violate the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution? Did the Honorable Renee Cardwell Hughes err in allowing this information to be introduced at trial?

Appellant's Brief at 5.

¶ 6 In his first issue, Appellant purports to argue that the verdict was against the weight of the evidence and that there was insufficient evidence to support the verdict. Although these two claims are distinct, *see Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000) (discussing the distinctions between a claim challenging the suffi-

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ciency of the evidence and a claim that the verdict is against the weight of the evidence), Appellant addressed both issues in a single argument section in his Brief to this Court. *See* Brief for Appellant at 37–42. However, we will address these claims separately.

■ ¶ 7 We first consider Appellant's claim regarding sufficiency of the evidence. Appellant argues the Commonwealth failed to prove he committed the crimes of murder and possessing an instrument of crime.[3] Specifically, Appellant contends the Commonwealth failed to prove Appellant was the person who shot the victim. Appellant argues the Commonwealth relied upon circumstantial evidence to establish that Appellant was the gunman who committed the crimes.

■ ¶ 8 When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa.Super.2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005), *appeal denied*, 585 Pa. 685, 887 A.2d 1239, (2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id.* Moreover, this Court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed.

*Id.* Circumstantial evidence itself can be sufficient to prove any element or all of the elements of a criminal homicide. *Commonwealth v. Gwynn*, 555 Pa. 86, 97, 723 A.2d 143, 148 (1998). Also, we have held that circumstantial evidence is reviewed by the same standard as direct evidence— that is, that a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa.Super.2003) (citations omitted). Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa.Super.2006).

■ ¶ 9 In order to prove first degree murder, the Commonwealth must demonstrate that a human being was unlawfully killed, that the defendant did the killing, and that the killing was done in an intentional, deliberate and premeditated manner. *Commonwealth v. Michael*, 544 Pa. 105, 110, 674 A.2d 1044, 1047 (1996) (citing *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221 (1995)). Furthermore, the use of a deadly weapon on a vital part of the body is sufficient evidence to prove the specific intent to kill. *Id.*

¶ 10 Regarding possession of an instrument of crime, our Supreme Court has long held that an "[a]ppellant's use of a loaded gun on his victim[ ] is more than sufficient to establish his guilt of possession of an instrument of crime." *Commonwealth v. McNair*, 529 Pa. 368, 373, 603 A.2d 1014, 1017 (1992) (citing 18 Pa. C.S.A. § 907(a)). We have also held that wholly circumstantial evidence is sufficient to support a conviction of possession of an instrument of crime. *See Commonwealth*

---

3. Appellant fails to include any argument regarding his VUFA convictions. We thus find a challenge to those convictions to be waived.

*See* Appellant's Brief at 37 (noting "[p]articular emphasis is on the charges of murder of the first degree and [PIC].").

*v. Young,* 692 A.2d 1112, 1114 (Pa.Super.1997) (holding that circumstantial evidence was sufficient to sustain conviction of possession of instrument of crime).

¶ 11 Our review of the record, viewed in the light most favorable to the Commonwealth, reflects the following circumstantial evidence presented by the Commonwealth proved Appellant did the killing in order to support the convictions of first degree murder and possession of an instrument of crime. The Commonwealth presented evidence that, in the early morning hours of the day in question, the victim and Appellant were in the victim's home and had an argument about a gun owned by the victim. N.T., 12/12/07, at 145–148. Appellant had been interested in holding the gun, and the victim refused to allow Appellant to hold it. *Id.* at 147–148. At approximately 8:15 in the morning, a neighbor across the street heard two bangs that sounded like firecrackers. *Id.* at 107–109. The neighbor then looked out of the window of his house and observed Appellant walking out of the victim's home. *Id.* at 109–111. The victim was discovered after 11:00 a.m., on the couch of his home, with a gunshot wound to his head. The Commonwealth also introduced evidence establishing that, at some time around noon on the day of the incident, Appellant arrived at the home of Samuel Gonzalez Rosario, and Appellant asked Mr. Rosario to hold a gun for Appellant. *Id.* at 62–71. Ballistics evidence established that the revolver retrieved from Mr. Rosario's home was the gun used to shoot the victim. *Id.* at 237.

¶ 12 The judge, sitting as finder of fact, chose to believe the evidence presented by the Commonwealth and we will not substitute our judgment for that of the trial judge. Therefore, we conclude that the actions taken by Appellant were sufficient to prove that Appellant did the killing

necessary for first degree murder beyond a reasonable doubt. Likewise, we conclude that the evidence was sufficient to prove Appellant used a loaded gun on his victim necessary to prove the crime of possession of an instrument of crime. Thus, under the totality of the circumstances, this circumstantial evidence, viewed in the light most favorable to the Commonwealth, is sufficient to sustain Appellant's convictions of first degree murder and possession of an instrument of crime. Consequently, Appellant's contrary argument lacks merit.

¶ 13 Appellant next argues that the verdict was against the weight of the evidence. In presenting this claim, Appellant relies upon the same theory employed in his sufficiency of the evidence argument, *i.e.,* the Commonwealth failed to establish that Appellant was present at the scene at the time of the shooting and was the person who fired the gun.

¶ 14 We use the following standard of review in addressing a weight of the evidence claim:

Our scope of review for such a claim is very narrow. The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court, and we will not disturb that decision absent an abuse of discretion. Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record. A claim that the evidence presented at trial was contradictory and unable to support the verdict requires the grant of a new trial only when the verdict is so contrary to

the evidence as to shock one's sense of justice.

*Commonwealth v. Young,* 692 A.2d 1112, 1114 (Pa.Super.1997) (citations omitted).

It must be emphasized that it is not for this Court or any appellate court to view the evidence as if it was the jury. Our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience.

*Commonwealth v. Griffin,* 453 Pa.Super. 657, 684 A.2d 589, 597 (1996). Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. *Widmer,* at 321, 744 A.2d at 753.

¶ 15 The trial court, sitting as the finder of fact, chose to believe the evidence presented by the Commonwealth, as well as the logical inferences derived therefrom, as was its right. The trial court made the following observation regarding the facts established by the evidence:

Fifteen year old, Omar Rodriguez was shot in the back of the head after an argument with [Appellant] with the gun that [Appellant] stole from the decedent's home and gave to another friend to hide.

The weight and sufficiency of the evidence supported, rather than contradicted the verdict rendered. The conclusion was reached well within the reasonable bounds of the court's discretion.

Trial Court Opinion, 7/16/08, at 6.

¶ 16 The trial court weighed the evidence and concluded Appellant was the perpetrator of the crimes in question. This determination is not so contrary to the evidence so as to shock one's sense of justice. We decline Appellant's invitation to assume the role of fact finder and to reweigh the evidence. Accordingly, we conclude that the trial court did not abuse its discretion in determining Appellant's weight of the evidence claim lacks merit.

¶ 17 Appellant last argues that the trial court erred in failing to suppress the fruits of Appellant's illegally obtained statement to police. Specifically, Appellant contends both the testimony of Mr. Rosario and the murder weapon should have been suppressed because the police acquired them through Appellant's statements made in violation of his *Miranda* rights.

▌ ¶ 18 The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Russo,* 594 Pa. 119, 126, 934 A.2d 1199, 1203 (2007) (citing *Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75 (2004)). Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id.* However, it is also well settled that the appellate court is not bound by the suppression court's conclusions of law. *Id.* (citing *Commonwealth v. Duncan,* 572 Pa. 438, 445, 817 A.2d 455, 459 (2003)).

With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only fac-

tual findings which are supported by the record are binding upon this [C]ourt. *Commonwealth v. Benton,* 440 Pa.Super. 441, 655 A.2d 1030, 1032 (1995) (citations omitted). In addition, we are aware that questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl,* 834 A.2d 638, 641 (Pa.Super.2003).

¶ 19 In *United States v. Patane,* 542 U.S. 630, 124 S.Ct. 2620, 159 L.Ed.2d 667 (2004) (plurality opinion), the United States Supreme Court addressed the admissibility of physical evidence obtained as the fruit of a statement made without the required *Miranda* warnings and concluded that evidence should not be suppressed as long as the statement was not coerced. *Id.* 542 U.S. at 636, 643. In *Commonwealth v. Abbas,* 862 A.2d 606 (Pa.Super.2004), a panel of this Court applied *Patane* as follows:

In *Patane,* the defendant was unlawfully interrogated. During the course of this interrogation, the detective asked the defendant about a gun about which the detective had received information. 124 S.Ct. at 2625. The defendant expressed his unwillingness to talk about the gun, but the detective persisted. Eventually, the defendant revealed that the gun was hidden in his bedroom. The Court concluded that, despite[ ] the illegality of the statement, the physical evidence was admissible. *Id.* at 2630. The Court stated: "Introduction of the nontestimonial fruit of a voluntary statement, such as respondent's pistol, does not implicate the [Self–Incrimination] Clause. It presents no risk that defendant's coerced statements (however defined) will be used against him at a criminal trial." *Id.* The case before us is analogous. Here, police read Abbas his *Miranda* rights and Abbas signed a form indicating that he had been read his rights, but he never signed a valid waiver. During the interrogation police took a statement from Abbas and they asked Abbas whether he had any pictures of the victim. Abbas produced the two photographs at issue. Abbas argued the photographs were obtained as a result of an interview of which there was no valid waiver of *Miranda* rights and, therefore, the photographs were inadmissible as fruit of the poisonous tree. The trial court suppressed Abbas' statements, but refused to suppress the photographs, relying on the independent source doctrine as an exception to the fruits doctrine. Our reading of *Patane* indicates that the doctrine is not applicable to non-testimonial or derivative physical evidence absent an actual coerced statement, and the exclusion of Abbas' statement was a "complete and sufficient remedy" for the *Miranda* violation. 124 S.Ct. at 2626. We conclude, therefore, that the photographs were admissible at trial.

*Abbas,* 862 A.2d at 611.

¶ 20 Recently, in *Commonwealth v. Thevenin,* 948 A.2d 859 (Pa.Super.2008), a panel of this Court applied both *Patane* and *Abbas* in making a determination of whether drugs should have been suppressed because they were discovered as a result of a voluntary statement which was not preceded by *Miranda* warnings. We ultimately concluded that the drugs should not have been suppressed because the statement divulging the location of the drugs was voluntary. *Id.* at 861–862.

■ ¶ 21 In the instant case, the trial court, in suppressing Appellant's statements but admitting the physical evidence, specifically found "[Appellant's] statements, although inadmissible, cannot be considered to have been involuntary or

coerced under all of the facts and circumstances ..." N.T., 7/12/07, at 7. Our review of the record reflects that the statement made by Appellant was, in fact, voluntary. Appellant was taken to the police station as a possible witness to the incident at approximately 1:00 or 1:30 p.m. Initially, Appellant made a statement denying involvement at approximately 4:15 p.m. At approximately 7:30 p.m., Appellant made the inculpatory statement, "I did it," to police. Thus, Appellant was at the police station for approximately six to seven hours [4] before he made his incriminating remarks. N.T., 1/23/07, at 18–19. Thereafter, Appellant informed the police of the location of the gun used in the murder. Accepting that the trial court properly held the uncoerced statements made by Appellant should be suppressed, we are left to apply the principles in *Patane* and *Abbas*.[5] In so doing, we conclude that the physical evidence obtained subsequent to the statement was not the fruit of the poisonous tree. Consequently, the trial court did not err in permitting the admission of the physical evidence which was obtained as a result of Appellant's voluntary statement. Thus, Appellant's contrary claim lacks merit.

■■■■ ¶ 22 Likewise, to the extent Appellant argues that the testimony of Mr. Rosario should have been suppressed as fruit of the poisonous tree, we conclude that the claim lacks merit. In *Commonwealth v. Hess*, 446 Pa.Super. 222, 666 A.2d 705 (1995), *appeal denied*, 544 Pa. 603, 674 A.2d 1067 (1996), a panel of this court addressed whether statements made by witnesses should have been suppressed

as fruit of the poisonous tree. In *Hess*, the defendant made un-*Mirandized* statements to police in which he named the bars where he had been drinking on the night of an accident that led to charges being filed against him. *Id.* at 707. The police went to the bars and discovered witnesses who testified about the defendant's intoxication on the night in question. *Id.* The defendant in *Hess* attempted to have the testimony excluded as fruit of the poisonous tree. This Court reiterated that the fruit of the poisonous tree doctrine is applicable only to constitutional violations, and the failure to issue *Miranda* warnings was not a violation of a defendant's Fifth Amendment rights. *Id.* at 707–708. The Court in *Hess* held that, because there was no finding that the defendant's statement was involuntary or coerced, his Fifth Amendment rights were not violated, and the fruit of the poisonous tree doctrine does not apply to the testimony of the witnesses discovered as a result of defendant's comments. *Id.* at 708. In this case, the trial court specifically found that Appellant's statements cannot be considered to have been involuntary or coerced. N.T., 7/12/07, at 7. Accordingly, the testimony of Mr. Rosario was properly admitted by the trial court, and Appellant's contrary claim in this regard lacks merit.[6]

¶ 23 Judgment of sentence affirmed.

---

4. In his appellate brief, Appellant asserts he arrived at the police station around 1:00 or 1:30 p.m. and he made his inculpatory statement around 7:30 p.m. Appellant's Brief at 44, 46–47.

5. Despite the Commonwealth's argument to the contrary, the trial court erred in concluding that Appellant was in *Miranda* warnings were necessary.

6. In his brief, Appellant also attempts to raise a claim that the law set forth in *Patane* is

inapplicable in Pennsylvania because Article I, Section 9 of the Pennsylvania Constitution affords greater protection than the constitutional provisions under the United States Constitution relied upon in *Patane*. Appellant's Brief at 47–52. However, Appellant's claim under the Pennsylvania Constitution is waived.

> At the outset, we note that issues, even those of constitutional dimension, are waived if not raised in the trial court. *Commonwealth v. Berryman,* 437 Pa.Super. 258, 649 A.2d 961, 973 (Pa.Super.1994) (citations omitted). "[A] new and different theory of relief may not be successfully advanced for the first time on appeal." *Commonwealth v. York,* 319 Pa.Super. 13, 465 A.2d 1028, 1032 (Pa.Super.1983) (citation omitted).

*Commonwealth v. Haughwout,* 837 A.2d 480, 486 (Pa.Super.2003). *See also* Pa.R.A.P. 302. (providing that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

The record reveals that Appellant waived his state constitutional claim pertaining to the applicability of *Patane* by failing to specifical-

ly raise it before the trial court. Accordingly, because Appellant's claim challenging the applicability of *Patane* under Article I, Section 9 has not been properly preserved for this Court's review, our decision is based solely on Fifth Amendment principles enunciated in *Patane* and its Pennsylvania progeny.

Moreover, to the extent Appellant asks us to reconsider our decisions in *Abbas* and *Thevenin,* we observe that we must follow the decisional law established by our own Court. *Blumenstock v. Gibson,* 811 A.2d 1029, 1039 (Pa.Super.2002), *appeal denied,* 573 Pa. 714, 828 A.2d 349 (2003). Unless or until *Abbas* and *Thevenin* are overturned by an *en banc* panel of this Court, or by a decision of the Pennsylvania Supreme Court, they continue to be viable precedent for this Court and for the courts of common pleas. *Id. See also Sorber v. American Motorists Ins. Co.,* 451 Pa.Super. 507, 680 A.2d 881, 882 (1996) (holding that, even though petition for allowance of appeal was pending before the Pennsylvania Supreme Court, decision remains binding precedent as long as the decision has not been overturned by our Supreme Court). Thus, we cannot afford Appellant the relief sought.