J-S68032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MARLAINA KARLA THOMAS, | : | |
| | : | |
| Appellant | : | No. 3546 EDA 2013 |

Appeal from the Judgment of Sentence entered on October 28, 2013
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No. CP-51-CR-0008066-2011

BEFORE:  ALLEN, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED NOVEMBER 21, 2014**

Marlaina Karla Thomas ("Thomas") appeals from the judgment of sentence imposed after a jury convicted her of attempted murder, aggravated assault, possession of an instrument of crime, and recklessly endangering another person.[1]  We affirm.

The trial court set forth the relevant facts underlying this appeal as follows:

> On June 2, 2011, nieces of [a friend of] the victim[, Ayesha Thompson (hereinafter "Thompson" or "the victim"),] had a fight with [Thomas's] daughter[, Marlaina Lucas ("Lucas"),] at a Chinese store.  Later that day, [Lucas] and her friends approached the victim and the nieces[,] who were sitting on the steps on the 5200 block of Marlowe Street in Philadelphia, PA.

---

[1] *See* 18 Pa.C.S.A. §§ 901(a), 2702(a), 907(a), 2705.

Four fights then broke out. Among the people fighting were [Lucas], [Lucas's] friend, and the nieces of the victim's friend.

The victim and two other adults tried to break up that fight. The victim then heard [Thomas] yell, "that's my fucking daughter" and saw [Thomas] cross the street towards her.

[Thomas] attempted to punch the victim in the face, but the victim moved her face and swung at [Thomas]. The two women had been fighting for about a minute, when the victim felt her arm "[give] out on [her]."

After her arm gave out, the victim felt as though she could not breathe and collapsed on the ground, and an unknown man helped her up and indicated that she had been cut. The victim then saw [Thomas] flee toward Bridge Street.

At that point, the victim realized that she had been cut from her jugular vein and down her arm. The victim immediately identified [Thomas] as the person who cut her. A friend gave the victim a rag, and the victim wrapped her skin with the cloth and started to run towards [Lucas]. As the victim was running towards [Lucas], the victim yelled, "your mom hit me; your mom cut me[,]" and then hit [Lucas]. The police eventually separated the two women.

Officer Luis Cordero ["Officer Cordero"] and Officer Edgar Vazquez arrived on the scene in response to a radio call around 9:00 [p.m.] reporting a fight on the highway at the intersection of Bridge and Hawthorne Streets in Northeast Philadelphia. Upon arrival, Officer Cordero observed 30 to 40 individuals in a crowd. At the scene, Officer Cordero encountered the victim, who was screaming and had a towel wrapped around her right shoulder. Officer Cordero attempted to ask the victim what had occurred, but she kept screaming and attempted to attack [Lucas].

Officer Cordero was holding the victim back so she could not attack [Lucas] again[,] when the victim began to show signs of dizziness. Officer Cordero tried to hold her up against a fence, but she collapsed and fell in and out of consciousness. After removing the towel to assess the extent of the victim's injuries, Officer Cordero saw two large and deep lacerations starting on

the victim's top right shoulder, running over her chest, and stretching down a few inches past her elbow.

Officer Cordero and Officer Vazquez took her to Frankford South Hospital. As part of her treatment, the victim had a drain placed in her neck at Frankford Hospital and needed surgery to "repair four lacerations including a laceration to the extern[al] jugular vein." She also needed a blood transfusion due to "acute blood loss." Upon discharge from the hospital, the victim had "limited use of her right arm." At the time of trial, the victim had been going to physical therapy twice a week for almost two years trying to rebuild muscle in her arm. At that time, she still had continual pain that was like an "itch inside of [her] body," for which she was still taking medication.

Trial Court Opinion, 3/10/14, at 1-3 (citations to record omitted).

After taking Thomas into custody, the police charged her with the above-mentioned offenses. The matter proceeded to trial, at the close of which the jury convicted Thomas of all counts. The trial court subsequently sentenced Thomas to serve an aggregate term of fourteen to twenty-eight years in prison, followed by ten years of probation. In response, Thomas filed a post-sentence Motion challenging the weight and sufficiency of the evidence. The trial court denied the post-sentence Motion, after which Thomas timely filed a Notice of Appeal.

Thomas presents the following issues for our review:

I. Whether the adjudication of guilt is based upon insufficient evidence where no witness testified that they actually observed [Thomas] cut the victim or in possession of a cutting implement[,] and where the circumstantial inference that she cut the victim was unreasonable[?]

II. Whether the adjudication of guilt is against the weight of the evidence and shocking to one's sense of justice

> where no witness testified that they had actually seen
> [Thomas] cut the victim[,] and where there was
> credible evidence that [Thomas's] daughter was the
> perpetrator who was seen throwing something into a
> sewer after the assault[?]

Brief for Appellant at 6 (issues reordered for ease of disposition).

Thomas first argues that the evidence was insufficient to convict her of any of the charged crimes because the Commonwealth did not establish beyond a reasonable doubt her identity as the person who had attacked the victim.[2]  ***See id.*** at 14-16; ***see also Commonwealth v. Hickman***, 309 A.2d 564, 566 (Pa. 1973) (stating that, in every criminal case, "[p]roof beyond a reasonable doubt of the identity of the accused as the person who committed the crime is essential to a conviction.").  Specifically, Thomas contends as follows:

> [Thompson] … never saw [Thomas] with a weapon, nor did she
> see [Thomas] cut her.  Thompson was face to face with
> [Thomas] and would have seen the weapon and the cutting had
> [Thomas] been the perpetrator.  Thompson observed [Thomas's]
> daughter[,] [] Lucas[,] throw an object down a sewer, so[,]
> circumstantially[,] it was [Lucas] who was in possession of the
> implement used for the cutting.  [Additionally, an eyewitness to
> the fight,] Vernice Byrd ["Byrd,"] [] did not see the actual
> cutting.  [Byrd] claimed to have seen [Thomas] take something
> out of her mouth[;] however[,] it would be preposterous to infer
> that the [Thomas was] engaging in a fist fight with a razor or
> other cutting implement in her mouth.  This is a flatly
> unreasonable inference.  …  Additionally, when Byrd was
> interviewed by a Detective on the day of the incident[,] she
> identified the cutter as the individual who was fighting Amanda

---

[2] Aside from challenging the jury's finding regarding Thomas's identity as the perpetrator, Thomas does not dispute that the evidence was sufficient to establish the elements of the crimes of which she was convicted.

Samuels[,] and she identified [Lucas as] the person fighting Amanda Samuels.

Brief for Appellant at 15.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Melvin***, 2014 PA Super 181, at *83 (Pa. Super. 2014) (citation omitted).

In its Pa.R.A.P. 1925(a) Opinion, the trial court determined that the evidence was sufficient to support each of Thomas's convictions, and her identity as the perpetrator, stating as follows:

> While the victim admitted that she did not actually see [Thomas] slash her or the weapon used, she knew no one else had been in physical contact with her. (N.T. 7/19/13 p. 54.) Additionally, [Byrd] saw [Thomas] reach into and pull something

out of her mouth right before the victim sustained her injuries. (N.T. 7/19/13 p. 97-98.)

Moreover, the victim identified [Thomas] unequivocally as her attacker three separate times before formal proceedings began: at the scene when the victim punched [Lucas] because her mother, [Thomas], cut her; at the hospital to the police officers[;] and in a photo array fourteen days after the attack. (N.T. 7/19/13 p. 46, 56-57, 63, 130, 133-34; N.T. 7/22/13 p. 8-9.)

Consequently, there was sufficient circumstantial evidence from which the jury could reasonably infer that it was [Thomas] who slashed the victim's throat and arm.[FN]

> [FN] Although there was some evidence from which the jury could infer that it was [Lucas,] and not [Thomas,] who slashed the victim's throat and arm, it was certainly reasonable and within the jury's province to disregard that evidence and conclude, based on other evidence, that it was, in fact, [Thomas] who slashed the victim's throat and arm.

Trial Court Opinion, 3/10/14, at 4-5 (footnote in original). We agree with the trial court's rationale, and find that it is supported by the record.

Additionally, we observe that, regarding Thomas's contention that Byrd had stated to a detective after the incident that Lucas was the person who cut the victim, Byrd testified at trial that the detective incorrectly reported her account of the attack. *See* N.T., 6/19/13, at 101-02, 105-07. It was the province of the jury to assign the weight to these conflicting accounts. *See Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011). Additionally, the jury could have considered the fact that Thomas fled the scene after the incident as circumstantial evidence that she was the perpetrator. *See Commonwealth v. Spotz*, 84 A.3d 294, 316 (Pa. 2014)

(noting that flight may constitute circumstantial evidence of consciousness of guilt). Accordingly, we conclude that the trial court properly rejected Thomas's sufficiency challenge.

Next, Thomas argues that the trial court erred in denying her post-sentence Motion challenging the jury's verdict as against the weight of the evidence. *See* Brief for Appellant at 12-14.

Our standard in reviewing a weight of the evidence claim is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis and citations omitted).

> Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. On appeal, [an appellate] Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight. Our review is limited to determining whether the trial court abused its discretion[.]

*Commonwealth v. Sanchez*, 36 A.3d 24, 27 (Pa. 2011) (citations and quotation marks omitted).

- 7 -

Initially, we observe that Thomas raises essentially the same arguments in support of her weight claim as she did in her challenge to the sufficiency of the evidence. *See* Brief for Appellant at 13-14; *see also id.* at 14-16 (setting forth Thomas's argument concerning her sufficiency claim). Particularly, Thomas challenges the jury's credibility determinations concerning the Commonwealth's witnesses, and contends that the evidence, and reasonable inferences to be drawn therefrom, more credibly indicated that Lucas was the perpetrator. *See id.* at 13-14. According to Thomas, "[i]t was [Lucas] who was the aggressor in this whole sorry incident. … [Lucas] had both the motive and the opportunity[,] and based upon [the victim's] observation that [Lucas] threw something into a sewer[,] had possession of the cutting implement." *Id.* at 13. Additionally, Thomas contends that the jury's credibility determinations were so erroneous as to shock one's sense of justice. *See id.* at 14 (arguing that no reasonable jury would have credited the testimony of Byrd that "[Thomas] reached into her mouth or a razor blade or other cutting instrument while trading punches with Thompson ….").

In the instant case, the jury credited the testimony of the Commonwealth's witnesses, and we may not reweigh the evidence or substitute our judgment for that of the jury. *See Sanchez, supra*; *see also Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009) (holding that the trial court properly exercised its discretion in denying a

weight challenge where appellant asked this Court to reweigh the evidence). To the extent that there were purported conflicts in the testimony presented by some of the Commonwealth's witnesses, the jury assessed the weight, if any, to be given this evidence. ***See Ratushny***, 17 A.3d at 1272 (stating that it is exclusively the province of the fact-finder to determine the weight to be accorded conflicting evidence). We discern no abuse by the trial court in rejecting Thomas's challenge to the weight of the evidence.

Accordingly, because we conclude that there was sufficient evidence to support each of Thomas's above-mentioned convictions, and the trial court properly rejected Thomas's weight of the evidence claim, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/21/2014</u>