J-S54005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CURTISHA HOLMES | |
| Appellant | No. 2016 EDA 2014 |

Appeal from the Judgment of Sentence June 4, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010437-2011

BEFORE:  BOWES, PANELLA, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED OCTOBER 14, 2015**

Curtisha Holmes appeals from the judgment of sentence of eleven and one-half to twenty-three months incarceration to be followed by five years probation after a jury found her guilty of aggravated assault, burglary, criminal trespass, simple assault, conspiracy to commit aggravated assault, and conspiracy to commit burglary.  We affirm on the basis of the opinion of the learned Judge Donna M. Woelpper.

The trial court delineated the facts as follows.

> On June 20, 2011, the complainant Tasha Polk ("Polk") went to Atlantic City to celebrate her birthday with her friend, Cocoa.  She returned to her apartment building at 2202 North 20th Street in Philadelphia at approximately 1:30 a.m. on June 21, 2011. Polk saw her neighbor Nicole Richardson ("Richardson") seated with the defendants on the front steps of the building adjacent to Polk's own apartment building. Polk, Richardson, and Polk's friend "T" walked upstairs to Polk's

---

* Former Justice specially assigned to the Superior Court.

apartment. Polk and T began arguing about Polk having gone to Atlantic City instead of to a party with T, as originally planned. While Polk and T screamed at one another, individuals from the neighborhood came up to Polk's apartment. The defendants and someone named Britney were among those who came upstairs.

Polk asked the crowd to leave her apartment, but they refused. Britney replied, "F*** no," and hit Polk in the face approximately five to ten times, until Polk fell back onto the couch. Defendant Holmes also hit Polk. Polk saw people recording the fight with their phones. Everyone left the apartment after the fight, except for Richardson and Polk. Polk locked her door but then called out the window to the crowd. Polk could not recall what she yelled out the window, but she did remember that she was yelling in anger. Within five minutes, the defendants, Britney, and fifteen to twenty other people came running back up to Polk's apartment. Defendant Holmes kicked in the door, breaking off the handle. Defendant Morgan was carrying something that looked like a broomstick.

The crowd pursued Polk up her apartment stairs to the bedroom. Richardson attempted to pull the individuals away from Polk. The defendants, Britney, and the other girls that Polk recognized from across the street started kicking at her head. Polk recalled Defendant Holmes kicking her and repeatedly threatening to kill her. Polk also recalled Defendant [Kahshima] Morgan using the broomstick to hit her head and face. Polk eventually lost consciousness. She estimated that she was hit with the stick, feet, and/or hands approximately forty times. When she regained consciousness, she found that the contents of her purse were missing, including her debit card, social security card, cash, makeup, and identification. She also observed damage to the living room walls. Polk testified that she had called the police, but she could not remember when she called. She also testified that the police never responded to the call.

Philadelphia Police Officer Eyleen Archie testified that on June 21, 2011 she received several radio calls for an assault at 2202 North 20th Street. Officer Archie first reported to the location at 1:41 a.m. for a call for a "person with a knife." Officer Archie did not investigate the property after that first call. She did, however, patrol the area for about two minutes. She

did not see anyone in the vicinity during those two minutes. She responded to another call at 3:26 a.m. She still did not see anyone in the vicinity. She knocked on the front door of Polk's building with her asp but did not receive an answer. She returned in response to a third call at 5:10 a.m. There still was no one in the area and no response to her knocking.

Polk stayed at Richardson's apartment, which was in the building adjacent to Polk's apartment, until Polk's mother picked her up and took her to Temple University Hospital that same day. Polk told the treating physician that she had been assaulted and beat around her head. Polk was diagnosed with a dental fracture, a subconjunctival hemorrhage, bruising to her face, a black eye, and sclera lesions. She was ordered to take 600 mg of Motrin every six hours.

Detective Anthony Anderson interviewed Polk at Central Detectives on June 22, 2011. During the interview, Polk named the defendants, as well as Britney, Tiffany, and Jessica, as people involved in the burglary and assault. Polk drove with Detective Anderson and pointed out where the defendants lived. Using the names and addresses, Detective Anderson pulled photographs of both defendants. Polk positively identified both as having been involved in the assault. Detective Anderson was not able to locate Britney, Tiffany, or Jessica because Polk did not know their last names or addresses. Detective Anderson executed a search warrant at both of defendants homes for any of Polk's belongings, or any weapon(s) used during the fight. Nothing was recovered.

Trial Court Opinion, 11/12/14, at 2-4 (internal citations and footnotes omitted).

A jury found Appellant guilty of aggravated assault, burglary, conspiracy to commit aggravated assault, conspiracy to commit burglary, trespass, and simple assault. The court sentenced Appellant on June 4, 2014. It imposed concurrent sentences of eleven and one-half to twenty-three months incarceration on the aggravated assault and burglary charges.

In addition, it imposed concurrent five year periods of probation for the conspiracy counts. The court did not impose a sentence for trespass and concluded that the simple assault charged merged with the aggravated assault crime. On June 18, 2014, the court appointed new counsel for Appellant, who filed a motion to reinstate her post-sentence motion rights *nunc pro tunc*. The court denied that motion. Counsel then filed a timely notice of appeal on July 2, 2014. The court directed that Appellant file and serve a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Rule 1925(a) decision. The matter is now ready for our review. Appellant raises four issues for our consideration.

I. Whether the evidence presented at trial was sufficient to convict Appellant of Aggravated Assault?

II. Whether the evidence presented at trial was sufficient to convict Appellant of Conspiracy to Commit Aggravated Assault?

III. Whether the evidence presented at trial was sufficient to convict Appellant of Burglary?

IV. Whether the evidence presented at trial was sufficient to convict Appellant of Conspiracy to Commit Burglary?

Appellant's brief at 3.

Each of Appellant's issues challenge the sufficiency of the evidence. In performing a sufficiency review, we consider all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d

108, 113 (Pa.Super. 2013) (*en banc*). We view the evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. ***Id***.

The evidence "need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." ***Id***. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. ***Id***. In addition, the Commonwealth can prove its case by circumstantial evidence. Where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances[,]" a defendant is entitled to relief. ***Id***. This Court does not "re-weigh the evidence and substitute our judgment for that of the fact-finder." ***Id***.

Appellant begins her argument by disregarding our standard of review and maintaining that the victim's "claims of assault were exaggerated and clearly contradicted on the record." Appellant's brief at 9. She continues that the record only shows that she was present inside the victim's apartment when the victim was attacked, and not that she attacked the victim or conspired to assault the victim. Appellant maintains that the victim did not suffer serious injury and treated her injuries with Ibuprofen. In addition, she contends that a video of one of the fights that transpired does not show Appellant striking the victim.

Appellant also argues that there is no evidence that she worked in concert with the group that physically attacked the victim. She insists that she was "one of many people who were over Complainant's apartment for what appeared to be a very out of control party." Appellant's brief at 17. In her view, the evidence only established a mere association with the attackers. With respect to her burglary conviction, Appellant avers that there is no evidence that she entered the victim's home with intent to commit a crime. Instead, she posits that "she was simply along for the ride with a crowd of people." *Id*. at 20.

The Commonwealth responds that Appellant has ignored the standard of review and attempted to recast the evidence in a light most favorable to her. It contends that considering the evidence in a light most favorable to it, the evidence was more than sufficient to establish the requisite elements of the crimes challenged on appeal.

After a thorough review of the record, the parties' briefs, and the Pa.R.A.P. 1925(a) opinion authored by the distinguished Judge Donna M. Woelpper, we find that she has ably discussed the issues and adopt her reasoning as our own. Accordingly, we affirm on the basis of her well-reasoned opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/14/2015

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

COMMONWEALTH OF
PENNSYLVANIA

**FILED**

CP-51-CR-0010437-2011

vs.

NOV 1 2 2014

Criminal Appeals Unit
First Judicial District of PA

SUPERIOR COURT
NO. 2016 EDA 2014

CURTISHA HOLMES                                :

## OPINION

WOELPPER, J.                                                              NOVEMBER 12, 2014

### I.    PROCEDURAL HISTORY

On March 21, 2014, the defendants Kahshima Morgan ("Defendant Morgan") and

Curtisha Holmes ("Defendant Holmes"), collectively ("defendants") were found guilty after a

jury trial[1] of aggravated assault,[2] burglary,[3] conspiracy to commit aggravated assault and

burglary,[4] criminal trespass,[5] and simple assault.[6] The court deferred sentencing for a pre-

sentence investigation ("PSI") to be conducted. On June 4, 2014,[7] the court sentenced the

defendants each to eleven and a half to twenty three months of incarceration, followed by five

years of reporting probation.[8] On June 25, 2014, court-appointed counsel[9] filed for each

---

[1] Both defendants were represented at trial by W. Fred Harrison, Jr. Esquire. The court colloquied the defendants on the issue of dual representation on March 18, 2014, prior to beginning the trial.

[2] 18 Pa.C.S. § 2702(a).

[3] 18 Pa.C.S. § 3502(a).

[4] 18 Pa.C.S. §903.

[5] 18 Pa.C.S. § 3503(a)(1)(ii).

[6] 18 Pa.C.S. § 2701(a). The jury found the defendants not guilty of robbery, conspiracy to commit robbery, theft by unlawful taking, and possession of an instrument of crime.

[7] Sentencing was originally scheduled for May 23, 2014. It was continued to June 4, 2014, at the request of defense counsel.

[8] Prior to sentencing, defense counsel made an oral motion for extraordinary relief, which motion the court denied. Notes of Testimony ("N.T."), June 4, 2014, at pp. 4-7. The court proceeded to order each defendant to serve eleven

1

defendant a "Petition to Reinstate Her Right to File Post Sentence Motions Nunc Pro Tunc." The court denied the motions. Counsel filed notices of appeal on behalf of both defendants on July 2, 2014 and statements of errors complained of on appeal ("Statements") on August 8, 2014. The Statements claimed that there was insufficient evidence to sustain the convictions. For the reasons that follow, this claim is without merit.

## II.    FACTUAL BACKGROUND

On June 20, 2011, the complainant Tasha Polk ("Polk") went to Atlantic City to celebrate her birthday with her friend, Cocoa. Notes of Testimony ("N.T."), Mar. 19, 2014 at p. 37. She returned to her apartment building at 2202 North 20th Street in Philadelphia at approximately 1:30 a.m. on June 21, 2011. *Id.* at 38. Polk saw her neighbor Nicole Richardson ("Richardson") seated with the defendants on the front steps of the building adjacent to Polk's own apartment building. *Id.* at 38-39; 146-47. Polk, Richardson, and Polk's friend "T" walked upstairs to Polk's apartment. *Id.* at 39-40. Polk and T began arguing about Polk having gone to Atlantic City instead of to a party with T, as originally planned. *Id.* at 40. While Polk and T screamed at one another, individuals from the neighborhood came up to Polk's apartment. *Id.* at 41. The defendants and someone named Britney were among those who came upstairs. *Id.*

Polk asked the crowd to leave her apartment, but they refused. *Id.* at 42. Britney replied, "F*** no," and hit Polk in the face approximately five to ten times, until Polk fell back onto the couch. *Id.* at 42-43. Defendant Holmes also hit Polk. *Id.* at 43. Polk saw people recording the

and a half to twenty-three months of incarceration on the aggravated assault and burglary charges, to run concurrently with one another. The court ordered a consecutive five years of probation on each of the conspiracy charges, to run concurrently with one another. The court ordered no further penalty on the criminal trespass charge. The simple assault charge merged with the aggravated assault charge for purposes of sentencing.

[9] On June 18, 2014, the court appointed Zachary Shaffer, Esquire as appellate counsel for Defendant Holmes and William Montoya, Esquire as appellate counsel for Defendant Morgan.

fight with their phones. *Id.* at 43-44. Everyone left the apartment after the fight, except for Richardson and Polk. *Id.* at 43. Polk locked her door but then called out the window to the crowd. *Id.* Polk could not recall what she yelled out the window, but she did remember that she was yelling in anger. *Id.* at 43; 50. Within five minutes, the defendants, Britney, and fifteen to twenty other people came running back up to Polk's apartment. *Id.* at 50-51. Defendant Holmes kicked in the door, breaking off the handle. *Id.* at 51; 53. Defendant Morgan was carrying something that looked like a broomstick. *Id.* at 51; 54.

The crowd pursued Polk up her apartment stairs to the bedroom. *Id.* at 54.[10] Richardson attempted to pull the individuals away from Polk. *Id.* at 55. The defendants, Britney, and the other girls that Polk recognized from across the street started kicking at her head. *Id.* at 55-56. Polk recalled Defendant Holmes kicking her and repeatedly threatening to kill her. *Id.* at 65. Polk also recalled Defendant Morgan using the broomstick to hit her head and face. *Id.* at 56. Polk eventually lost consciousness. *Id.* at 57. She estimated that she was hit with the stick, feet, and/or hands approximately forty times. *Id.* When she regained consciousness, she found that the contents of her purse were missing, including her debit card, social security card, cash, makeup, and identification. *Id.* at 63. She also observed damage to the living room walls. *Id.* at 64. Polk testified that she had called the police, but she could not remember when she called. *Id.* at 58. She also testified that the police never responded to the call. *Id.*

Philadelphia Police Officer Eyleen Archie testified that on June 21, 2011 she received several radio calls for an assault at 2202 North 20th Street. N.T., Mar. 21, 2014 at p. 7. Officer Archie first reported to the location at 1:41 a.m. for a call for a "person with a knife." *Id.* at 14; 16. Officer Archie did not investigate the property after that first call. She did, however, patrol

---

[10] Polk's apartment covers two floors of the apartment building. N.T., Mar. 19, 2014 at p. 36.

3

the area for about two minutes. *Id.* at 17-18. She did not see anyone in the vicinity during those two minutes. *Id.* She responded to another call at 3:26 a.m. *Id.* at 10. She still did not see anyone in the vicinity. *Id.* at 18. She knocked on the front door of Polk's building with her asp but did not receive an answer. *Id.* at 19. She returned in response to a third call at 5:10 a.m. *Id.* at 20. There still was no one in the area and no response to her knocking. *Id.*

Polk stayed at Richardson's apartment, which was in the building adjacent to Polk's apartment, until Polk's mother picked her up and took her to Temple University Hospital that same day (*i.e.*, June 21, 2011). N.T., Mar. 19, 2014 at pp. 57-58. Polk told the treating physician that she had been assaulted and beat around her head. N.T., Mar. 21, 2014 at p. 23. Polk was diagnosed with a dental fracture, a subconjunctival hemorrhage, bruising to her face, a black eye, and sclera lesions. *Id.* at 23-24. She was ordered to take 600 mg of Motrin every six hours. *Id.* at 24.

Detective Anthony Anderson interviewed Polk at Central Detectives on June 22, 2011. N.T., Mar. 19, 2014 at p. 178. During the interview, Polk named the defendants, as well as Britney, Tiffany, and Jessica, as people involved in the burglary and assault. N.T., Mar. 19, 2014 at p. 178-79. Polk drove with Detective Anderson and pointed out where the defendants lived. *Id.* at 179. Using the names and addresses, Detective Anderson pulled photographs of both defendants. *Id.* at 180. Polk positively identified both as having been involved in the assault. *Id.* Detective Anderson was not able to locate Britney, Tiffany, or Jessica because Polk did not know their last names or addresses. *Id.* Detective Anderson executed a search warrant at both of defendants' homes for any of Polk's belongings, or any weapon(s) used during the fight. *Id.* at 181. Nothing was recovered. *Id.*

4

## III. DISCUSSION

The standard for reviewing a sufficiency of the evidence challenge is to consider the evidence in the light most favorable to the Commonwealth, "giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *See Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. Ct. 2009). A verdict is supported if the evidence establishes, beyond a reasonable doubt, that the accused committed every element of the crime charged. *Id.* If the record supports the verdict, the reviewing court "may not substitute its judgment for that of the fact finder." *Id.*

### A. Aggravated Assault

The evidence at trial was sufficient to support the jury's guilty verdict as to the aggravated assault charges. One is guilty of aggravated assault if she "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). An injury constitutes "serious bodily injury" if it creates "a substantial risk of death or…causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2602. If the resulting injury is not considered serious bodily injury, "the Commonwealth must prove that the appellant acted with specific intent to cause serious bodily injury." *Commonwealth v. Lewis*, 911 A.2d 558, 564 (Pa. Super. Ct. 2006) (internal citations omitted). This burden may be met using direct or circumstantial evidence. *Id.*

Polk testified that Defendant Holmes hit her during the first fight in the apartment, and then came back a second time and repeatedly kicked her in the head, while threatening to kill

5

her. N.T., Mar. 19, 2014 at pp. 43; 55-56; 65. The assault ended only after Polk lost consciousness. *Id.* at 56-57. The jury reasonably concluded that by repeatedly kicking Polk's head Defendant Holmes was attempting to cause serious bodily injury. *See e.g., Commonwealth v. Glover*, 449 A.2d 662, 665 (Pa. Super. Ct. 1982), *affirmed*, 458 A.2d 935 (Pa. 1983) (jury reasonably could infer intent to cause serious bodily injury when defendant and others repeatedly hit victim in head and kicked him).

The evidence established that Defendant Morgan also targeted Polk's head and face during the assault. After the first fight, and after Polk yelled out her window to the crowd, Defendant Morgan not only returned to Polk's apartment, but returned with a broomstick-like object. N.T., Mar. 19, 2014 at 54. Defendant Morgan used that object to strike Polk's head and face. *Id.* at 56. For the reasons above, the jury also reasonably concluded that there was sufficient evidence that Defendant Morgan hit Polk's head and face with the intent to cause serious bodily injury.

### B. Simple Assault

This same evidence was sufficient to sustain the jury's guilty verdict on the simple assault charges. A defendant is guilty of simple assault if she "intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1). Here, Polk's testimony established that Defendant Holmes kicked her repeatedly and Defendant Morgan hit her with a broomstick. Furthermore, the parties stipulated to Polk's injuries as a result of the assault, including a dental fracture, a subconjunctival hemorrhage, bruising to her face, a black eye, and sclera lesions. This evidence was sufficient to sustain the jury's verdict.

6

## C. Burglary

One is guilty of burglary if she "enters a building or occupied structure...with [the] intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S. § 3502(a). There was sufficient evidence at trial to establish each of these elements. First, Polk testified that the defendants entered her apartment, both while she was initially arguing with T, and again after Polk yelled something to the crowd from her window. N.T., Mar. 19, 2014 at pp. 41; 50-51. Second, there was sufficient evidence that when the defendants entered Polk's apartment the second time, they were doing so for the purpose of having a physical fight. The defendants and others came running up the stairs to the apartment just minutes after Polk had screamed something at them from the upstairs window. *Id.* at 50-51. They did not knock on the door or scream for Polk to come outside. Instead, Defendant Holmes physically broke in the locked door to Polk's apartment. *Id.* at 51; 53. Then, after forcing Polk into her bedroom, Defendant Holmes began repeatedly assaulting her. *Id.* at 65. Defendant Morgan had come prepared with a broomstick 'roomstick-like object, and joined in the assault. *Id.* at 54; 56. Finally, Polk's apartment ipen to the public, nor were the defendants licensed or privileged to enter. Polk hac illy told everyone to get out of her apartment during her argument with T. *Id.* at 42. the crowd finally left, Polk locked the door to her home. *Id.* at 43. The defendants were able to enter only after Defendant Holmes forcibly kicked open the door. Therefore, the evidence was sufficient to sustain the jury's guilty verdict on the burglary charge.

### D. Conspiracy to Commit Aggravated Assault and Burglary

There was also sufficient evidence to sustain the jury's verdict as to conspiracy to commit both the aggravated assaults and burglary. A conviction for criminal conspiracy requires the Commonwealth to prove that "(1) the defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy." *See Commonwealth v. Smith*, 69 A.3d 259, 263 (Pa. Super. Ct. 2013). The overt act need only be committed by one member of the conspiracy, not necessarily the defendant. *Id.* Proof of an existing criminal partnership is often based on circumstantial evidence, because a formal agreement can rarely be proven. *Id.* "[A] conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation." *Id.* (internal quotations omitted).

While there was no evidence at trial of a formal agreement between the defendants to commit the burglary and aggravated assault, there was sufficient circumstantial evidence of a "criminal confederation." Minutes after Polk shouted out her apartment window, the defendants (together and with others) charged up the stairs to Polk's apartment door. N.T., Mar. 19, 2014, at pp. 50-51. Finding it locked, Defendant Holmes kicked the door in with enough force to break the handle, thereby facilitating their entry and pursuit of Polk. *Id.* at 51; 53. Both defendants then proceeded with others to chase Polk up to her bedroom where they physically assaulted her. *Id.* at 55-56; 65. From this conduct the jury reasonably concluded that the defendants were both active participants in the same criminal objective: to enter Polk's home (without privilege or license to do so) intending to physically assault her.

8

### E. Criminal Trespass

Finally, the evidence was sufficient to convict the defendants of criminal trespass. A defendant is guilty of criminal trespass if "knowing that [she] is not licensed or privileged to do so, [she]...breaks into any building or occupied structure..." 18 Pa.C.S. § 3503(a)(ii). "Breaks into" is defined to include gaining "entry by force, breaking, intimidation, [or] unauthorized opening of locks..." 18 Pa.C.S. § 3503(b). Both defendants knew that they were not permitted to enter Polk's apartment. Polk told them to get out when they came up to her apartment during her argument with T. N.T., Mar. 19, 2014 at p. 42. Additionally, following that incident, Polk locked her front door. *Id.* at 43. It remained locked when the defendants came up a second time. It was only after Defendant Holmes kicked open the door that the defendants and others were able to enter. Although Defendant Morgan was not the individual who physically forced the door open, as outlined above, she was part of a criminal conspiracy with Holmes at the time of the forced entry. Therefore, the jury found her liable for the actions of her co-conspirator. *See Smith*, 69 A.3d at 263 (overt act of conspiracy need only be committed by one with whom defendant has conspired, not necessarily by the defendant him or herself). There was sufficient evidence to find both defendants guilty of criminal trespass.

### IV.    CONCLUSION

For the foregoing reasons, the judgment of sentence should be affirmed.

WOELPPER, J.

9