J-S62017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANGEL M. RIOS-GONZALEZ, | |
| Appellant | No. 2501 EDA 2013 |

Appeal from the Judgment of Sentence of August 2, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-51-CR-0000863-2012

BEFORE:  ALLEN, OLSON AND OTT, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 30, 2014**

Appellant, Angel M. Rios-Gonzalez, appeals from the judgment of sentence entered on August 2, 2013 in the Criminal Division of the Court of Common Pleas of Montgomery County.  We affirm.

The trial court summarized the relevant historical and procedural facts in this case as follows:

> The instant case arises out of events that occurred on January 25, 2012, in Lebanon, Pennsylvania.[1]  At approximately 8:45 a.m., Sergeant Brett A. Hopkins ("Hopkins"), a twenty-eight-year veteran of the Cornwall Police Department in Lebanon, and seven-year veteran of the Drug Enforcement Agency (DEA) Task Force in Harrisburg, arrested Appellant at his residence pursuant to a warrant from the Montgomery County Police Department.

---

[1] The Commonwealth and Appellant reached a pretrial agreement that all charges in this case would be consolidated and tried in Montgomery County.

When Hopkins arrived at the residence, he was accompanied by two officers on the porch, and two officers in the back alley. One of Appellant's children opened the door and walked into the room where Hopkins was standing at the doorway. Hopkins recognized Appellant and told him that the police had a warrant for his arrest and the police entered the room. Police secured Appellant in handcuffs and explained that the arrest warrant was for drug trafficking out of Philadelphia.

In the residence were Appellant's wife, nineteen-year-old-son, and school age child. Police did not search any of Appellant's family members. Hopkins described Appellant as "very cooperative" and "polite." After ascertaining that Appellant spoke and understood English, and was not under the influence of drugs or alcohol, Hopkins read Appellant his *Miranda*[2] rights. Hopkins then asked if Appellant would like to speak to the police and Appellant indicated that he would.

At this point, Hopkins asked, for the first time in the course of the arrest, if Appellant had any drugs, money or guns in the residence. Appellant indicated that he owned a gun, and directed the police to its location in another room.

Hopkins then asked for permission to search the rest of the residence. Appellant replied that he had no problem with police searching the rest of the residence, and that they could check wherever they wanted.

When police began searching the residence, Appellant asked Hopkins for permission to change his clothes, which Hopkins granted. To give Appellant privacy to change his clothes, Hopkins and Appellant proceeded to a bathroom with Appellant leading the way.

As Appellant began changing in the bathroom, he and Hopkins maintained a polite rapport. After a few minutes, a detective who was in the process of searching the residence came into the bathroom and presented Appellant with a bread crumb container he had found in the kitchen pantry. The detective asked Appellant, "What's this?" and proceeded to unscrew the bottom

_____

2 *Miranda v. Arizona*, 384 U.S. 436 (1966).

of the container demonstrating it was a false-bottom container. At trial, Hopkins testified that, in his experience, false-bottom containers often are used by drug dealers to hide contraband. When Appellant saw the container, he hung his head and said, "That's mine from a long time ago." Appellant then became visibly nervous and repeatedly stood up and sat back down on the toilet area.

For a second time in the course of the arrest and search, police asked Appellant if they were going to find any drugs in the house. Appellant did not respond. The detective told Appellant that if they find drugs in the house, then any adult in the house who is linked to the drugs could be arrested. Appellant remained unresponsive.

At this point, the detective left to continue to search the residence, leaving Hopkins and Appellant alone in the bathroom again. Hopkins and Appellant returned to their polite conversation, discussing Appellant's pet homing pigeons in the backyard, the arrest warrant, and why the police were in his house.

Hopkins then inquired a third and final time about any drugs in the house, simply asking Appellant, "Where are the drugs hidden at?" Appellant paused for a few seconds and then said that he would show Hopkins where the drugs were because he did not want his wife to get in trouble.

Appellant led Hopkins out to the fenced-in backyard, and asked Hopkins if he would let him secure his pit bull, which was loose in the backyard, before the police went outside. Police allowed him to go outside ahead of them and secure his dog. After the pit bull was secured in its cage, the police followed Appellant to a garage in the backyard. Even as they walked to the garage, Appellant and Hopkins continued their conversation about Appellant's homing pigeons.

Once in the garage, Appellant indicated that the drugs were in a pigeon feed bin. Hopkins dug his hand into the pigeon feed approximately ten inches and pulled out white packages of cocaine. At trial, the parties stipulated that this substance was indeed cocaine and amounted to 153 grams. On the shelves of the garage, the police found an electronic scale and bulk leftover packaging in the form of Ziploc bags, which Hopkins testified are

typically used to weigh and package controlled substance[s] for resale. There were many plastic sandwich bags with their corners cut, which, based on his experience, Hopkins interpreted to mean that they had already been used to package a controlled substance. Also found in the same vicinity as the scale and plastic bags were two empty Coors Light beer cans stuffed full of corner packaging. After the drugs and other items were recovered, the police asked Appellant if there were any large amounts of currency in the house, and Appellant directed them to a safe in the house where he had $4,000[.00] in cash.

Before transporting Appellant to the Lebanon County Drug Task Force office ("task force office"), the police granted Appellant's request for some time to speak with his wife at his kitchen table to show her how to pay bills for the family. Hopkins testified that the entire encounter from arrest to departure was approximately one hour and fifteen minutes.

At the task force office, Appellant gave a voluntary statement to police that he had been dealing drugs for about a year. Appellant also stated that he would travel to Philadelphia once a week to pick up between 62 and 63 grams of cocaine for $2,300[.00], and that he would sell it to make a $1,000[.00] profit.

On March 23, 2012, Appellant filed an Omnibus Pretrial Motion that was argued before th[e trial court] at a pre-trial motions hearing ("Suppression Hearing") on November 13, 2012. At this hearing, Appellant argued, *inter alia*, for the suppression of physical evidence recovered and statements taken during and after Appellant's arrest. Specifically, Appellant claimed that [the arrest warrant lacked probable cause and that] his consent to search and self-incriminatory statements were inadmissible at trial because they were obtained by coercion. By order dated November 15, 2012 (docketed November 16, 2012) ("Suppression Hearing Order"), [the trial court] denied Appellant's Omnibus Pretrial Motion in its entirety.

At trial, the jury found Appellant guilty of [p]ossession with [i]ntent to [d]eliver a [c]ontrolled [s]ubstance. A sentencing hearing occurred on August 2, 2013. Th[e trial c]ourt sentenced Appellant to four (4) to ten (10) years' total confinement. On August 29, 2013, Appellant filed a [n]otice of [a]ppeal of his judgment of sentence. Th[e trial c]ourt issued an order on

September 3, 2012 (docketed September 4, 2013), directing Appellant to file a [c]oncise [s]tatement of [e]rrors [c]omplained of on [a]ppeal ("[c]oncise [s]tatement") within twenty-one (21) days. Appellant filed his [c]oncise [s]tatement on September 20, 2013.

Trial Court Opinion, 12/19/13, at 1-5.

Appellant's brief raises the following claims for our review:

1. Did the trial court commit reversible error by denying Appellant's motion to suppress all physical evidence and all statements of Appellant where:

   A. The affidavit of probable cause supporting the arrest warrant did not contain legally sufficient probable cause, and the recovery of said evidence and statements made resulted from an illegal arrest, and there was not dissipation of the taint from said illegality?

   B. In finding that consent to search and any statements made were voluntary, and not the result of unlawful duress and coercion on the part of police?[]

2. Did the trial court commit reversible error by not charging the jury that they were required to, or in the alternative, permitted to, disregard the evidence recovered at Appellant's home, if they found the Appellant's "consent" was the product of coercion/duress?

3. Did the trial court commit reversible error in its instruction to the jury's final question by stating the search of garage was legal, and in his response to [the] jury in the deliberation room?

Appellant's Brief at 4-5 (footnote omitted).

Appellant's first issue raises a two-part challenge to the trial court's order that denied his motion to suppress physical evidence and statements

obtained by the police. First, Appellant argues that his arrest, and the search that ensued, were unlawful because the warrant for his arrest was issued without probable cause. Next, Appellant claims that the police coerced him into giving consent to search his detached garage and, therefore, said consent was involuntary. Lastly, Appellant advances a related claim that certain incriminating statements made at his home, as well as others made subsequently at the police station, were also coerced and, hence, involuntary. We address appellant's contentions in turn.

Our standard of review over Appellant's opening claims is a familiar one.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Ranson*, 2014 WL 5018477, *2 (Pa. Super. 2014) (case citations omitted).

Appellant begins his suppression challenge by arguing that his arrest was illegal since the affidavit offered in support of his arrest warrant failed to

demonstrate probable cause. Specifically, Appellant relies upon the relative paucity of references to him in the affidavit of probable cause, together with the fact that he was not identified by name during intercepted telephone conversations between alleged co-conspirators. Complaining that mere presence or affiliation with co-conspirators is insufficient to establish probable cause, Appellant claims that his alleged involvement in criminal activity rests upon factually unsupported police hunches and guesswork. *See* Appellant's Brief at 20-23. No relief is due on this claim.

> The Fourth Amendment requires a showing of probable cause to justify the issuance of a warrant for either arrest or seizure. ***Giordenello v. United States***, 357 U.S. 480 (1958). [Probable cause] exists if the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that the suspect had committed or is committing a crime. While it requires less than evidence which would justify conviction, nevertheless suspicion and conjecture do not constitute probable cause. It is only the probability, and not a *prima facie* showing of criminal activity, that is the standard of probable cause.

***Commonwealth v. Blakney***, 396 A.2d 5, 7 (Pa. 1978). "At any hearing on a motion challenging an arrest warrant, no evidence shall be admissible to establish probable cause for the arrest warrant other than the affidavits provided [in support of the warrant.]" Pa.R.Crim.P. 513(B).

In this case, the affidavit of probable cause submitted in support of Appellant's arrest set forth reasonably trustworthy information that would persuade a prudent individual that Appellant committed a criminal offense. The affidavit alleged that two known cocaine traffickers arranged a drug

transaction that involved a purchaser from Lebanon County. Pursuant to those arrangements, the purchaser was to arrive at a Philadelphia address at around 10:00 a.m. the following day. At 10:22 a.m. the next day, one of the two known suppliers stated that the purchaser was present at the Philadelphia residence. Approximately one hour later, a police officer observed a vehicle registered in Appellant's name and to his Lebanon County address outside the Philadelphia residence. Surveillance officers later spotted Appellant leaving the Philadelphia residence in his vehicle. Under the totality of circumstances, there was a fair probability that Appellant was the Lebanon County drug purchaser who was the subject of communications regarding the pre-arranged narcotics transaction referenced in the affidavit of probable cause. Hence, the police acted pursuant to a valid warrant in effectuating Appellant's arrest.

We turn now to Appellant's claim that the arresting officers unlawfully used coercion to elicit his consent to a warrantless search of his detached garage.[3] Appellant claims that the protracted length of custodial questioning, combined with police threats to hold members of Appellant's family responsible for controlled substances that could be linked to them,

---

[3] Appellant acknowledges that he received a recitation of his rights pursuant to *Miranda* and he does not dispute that he knowingly and voluntarily consented to a search of his residence. His sole challenge here is focused upon the voluntariness of his consent to search his detached garage, a building within the curtilage of his property.

rendered Appellant's consent involuntary and, therefore, invalid. This claim also fails.

> The following principles guide our inquiry on this issue.
>
> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect[] individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." **Commonwealth v. Campbell**, 862 A.2d 659, 663 (Pa. Super. 2004) (citations omitted). Searches by the state shall be permitted only upon obtaining a warrant issued by a neutral and detached magistrate. **Commonwealth v. Perry**, 798 A.2d 697, 699 (Pa. 2002). Thus, as a general proposition, warrantless searches are unreasonable for constitutional purposes. **Perry**, 798 A.2d at 699–700. Evidence obtained from an unreasonable search or seizure is inadmissible at trial. **Campbell**, 862 A.2d at 663 (citation omitted).
>
> Police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. One such exception is consent, voluntarily given. **Commonwealth v. Strickler**, 757 A.2d 884, 888 (Pa. 2000). To establish a valid consensual search, the Commonwealth must first prove that the consent was given during a legal police interaction. Where the underlying encounter is [] lawful, voluntariness becomes the exclusive focus. **Strickler**, 757 A.2d at 888–889.

**Commonwealth v. Bell**, 871 A.2d 267, 272-273 (Pa. Super. 2005) (parallel citations omitted), *appeal denied*, 882 A.2d 1004 (Pa. 2005).

As we have determined above, the police arrested Appellant pursuant to a valid arrest warrant supported by probable cause. Hence, the underlying police/citizen encounter in this case was lawful. Given the validity of the interaction, we shift our focus to whether Appellant's consent eliminated the need for a search warrant.

The Commonwealth has the burden to prove that a defendant consented to a warrantless search. **Strickler**, 757 A.2d at 901. "To establish a voluntary consensual search, the Commonwealth must prove that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances." **Id.**

[The factors which may be considered in assessing the legality of a consensual search include the presence or absence of police excesses, physical contact or police direction of the subject's movements, demeanor of the police officer, location of the encounter, manner of expression used by officer in addressing the subject, content of interrogatories or statements, whether subject was told that he or she was free to leave, and the maturity, sophistication and mental or emotional state of the subject, which includes age, intelligence and capacity to exercise free will. **Id.**]

**Bell**, 871 A.2d at 273-274 (parallel citations omitted).

We have carefully reviewed the submissions of the parties, the opinion issued by the trial court, and the certified record on appeal, including the notes of testimony from Appellant's suppression hearing. Based upon our review, we are persuaded that the trial court has adequately and accurately examined Appellant's coerced consent claim and that Appellant is not entitled to relief for the reasons expressed by the trial court in its opinion.[4]

_____

[4] In his brief, Appellant relies heavily upon this Court's decision in **Commonwealth v. Collini**, 398 A.2d 1044 (Pa. Super. 1979). **See** Appellant's Brief at 26-28. In **Collini**, this Court held that the defendant's arrest on suspicion of possession of controlled substances was not based upon probable cause and was therefore illegal. We then held that the ensuing searches of the defendant's person and his vehicle were invalid and that the evidence uncovered thereby should have been suppressed. **Id.** at 1049. We also concluded that the defendant's consent to the search of his
*(Footnote Continued Next Page)*

*See* Trial Court Opinion, 12/19/13, at 7-12. We therefore adopt this aspect of the trial court's opinion as our own and direct the parties to attach the trial court's opinion to all future filings related to the disposition of this appeal.

Similar to his coerced consent claim, Appellant contends that the police improperly induced him to make inculpatory statements at the time of his arrest and thereafter at the police station. Here, too, Appellant alleges that his statements were not an act of free will, but were compelled through

*(Footnote Continued)* _____

home, the evidence obtained as a result, and the defendant's subsequent incriminating statement should have been suppressed as fruit of the illegal arrest under *Wong Sun v. United States*, 371 U.S. 471 (1973). *See Collini*, 398 A.2d at 1049.

We find that *Collini* is readily distinguishable from the present case and that Appellant's reliance upon that decision is unavailing. As a preliminary matter, we have determined that the police in this case arrested Appellant pursuant to a valid warrant that was supported by probable cause. Hence, there is no need to consider whether evidence obtained after an unlawful action by law enforcement authorities was recovered through exploitation of the original illegality or through sufficiently distinguishable means. This was a significant component of our analysis in *Collini*. Moreover, in contrast to the present case where Appellant was arrested and questioned (primarily) in his home, the defendant in *Collini* was initially arrested and questioned on a roadway. Thereafter, the *Collini* defendant, his wife, and other vehicle passengers were transported to the police station where questioning resumed and the defendant consented to a search of his home. The defendant was then transported to his home by the police to be present during the search and was then taken back to the police station, where police obtained from him an incriminating statement admitting his involvement in the sale of drugs. In sum, the defendant in *Collini* was subjected to continued interrogation by several officers over a more prolonged period of time than that involved in the present case. Thus, we decline to follow *Collini* in this appeal.

a coercive atmosphere created by the police, including threats of criminal liability against members of Appellant's family and the possible forfeiture of the family home. Appellant's Brief at 15. The challenged statements relate to Appellant's agreement to show the police where he had hidden the contraband on his property. *See e.g.* N.T., 11/13/12, at 56 and 83. After careful consideration, we conclude that no relief is due.

"The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review." *Commonwealth v. Templin*, 795 A.2d 959, 961 (Pa. 2002). Recently, our Supreme Court reiterated the legal standard for determining whether an inculpatory statement is voluntary.

> The test for determining the voluntariness, and thus the admissibility, of an accused's statement is the totality of the circumstances surrounding the statement. The mere fact that there is some passage of time between when an accused is arrested and when he or she gives an inculpatory statement does not constitute grounds for suppression of the statement. Numerous factors should be considered under a totality of the circumstances test to determine whether a statement was freely and voluntarily made: the means and duration of the interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other factors which

might serve to drain one's powers of resistance to suggestion and coercion.

***Commonwealth v. Martin***, 101 A.3d 706, 724-725 (Pa. 2014) (internal citations omitted).   In assessing whether a statement was voluntarily uttered, our focus "is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess."  ***Templin***, 795 A.2d at 966 (noting that law enforcement is not required to coddle individuals accused of criminal activity).

Upon review of the submissions of the parties, the opinion issued by the trial court, and the certified record, we are convinced that the trial court has adequately and accurately examined Appellant's challenge to the admissibility of his incriminating statements and that Appellant is not entitled to relief for the reasons expressed by the trial court.  ***See*** Trial Court Opinion, 12/19/13, at 12-15.  Accordingly, we adopt this aspect of the trial court's opinion as our own and direct the parties to attach the trial court's opinion to all future filings related to the disposition of this appeal.

In his second issue, Appellant alleges that, in view of the evidence demonstrating that he did not voluntarily disclose the location of the cocaine, the trial court wrongly refused to instruct the jury to disregard physical evidence that flowed from Appellant's statements directing officers to the contraband.  This contention merits no relief.

Initially, we find that Appellant has waived appellate review of this claim by failing to lodge a specific objection to the trial court's instruction to the jury. *See* N.T., 5/17/13, at 232 (counsel for Appellant stating he had nothing to add before jury began deliberations); Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."); *Commonwealth v. Marquez*, 980 A.2d 145, 150-151 (Pa. Super. 2009) ("[T]he mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge....") (citation omitted), *appeal denied*, 987 A.2d 160 (Pa. 2009). Even if we were to reach the merits of Appellant's second issue, we would deny relief.

> When reviewing a challenge to a jury instruction, we review the charge as a whole to ensure it was a fair and complete statement of the law. Trial courts possess great discretion in phrasing jury instructions so long as the law is clearly, adequately, and accurately presented to the jury. [A] trial court need not accept counsel's wording for an instruction, as long as the instruction given correctly reflects the law.

*Commonwealth v. Towles*, 2014 WL 5094266, *12 (Pa. 2014) (citations omitted).

Appellant alleges that the trial court erred in refusing to instruct the jury that it should disregard the cocaine recovered from Appellant's garage if it concluded that Appellant's statements that led officers to the contraband

were involuntary. Appellant relies on **United States v. Patane**, 542 U.S. 630 (2004) and **Commonwealth v. Abbas**, 862 A.2d 606 (Pa. Super. 2004) to assert that the admission of physical evidence that derives from an unlawfully obtained statement is strictly forbidden. However, we read **Patane** and **Abbas** as holding that physical evidence obtained because of an alleged **Miranda** violation is not subject to suppression absent an actual coerced statement. **See Abbas**, 862 A.2d at 611. In passing upon the admissibility of seized contraband at trial, the court below ruled, and we have affirmed, that Appellant knowingly waived his **Miranda** rights, voluntarily consented to a search of his property, and willingly revealed his involvement in narcotics trafficking. Here, the trial court correctly instructed the jury to evaluate all the evidence submitted at trial and to assess the voluntariness of Appellant's statement. If the jury found that Appellant's statements were not voluntary, then it was to disregard Appellant's statements but not the physical evidence (*i.e.* the cocaine and packaging materials), which the court previously determined should be admitted at trial. **See** Pa.R.Crim.P. 581(J) ("[i]f the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive, and binding at trial"). Since the trial court correctly instructed the jury according to applicable legal principles, no relief is due.

In his final claim, Appellant claims that the trial court offered a prejudicial response to an inquiry posed by the jury. During deliberations,

the jury asked the court, "What is the effect of an admission secured from an involuntary confession?"  N.T., 5/17/13, at 277-278.  In response, the trial court replied:

> If you determine that the statement was involuntary, you may not consider the statement as evidence against the defendant. However, the jury is directed that the search of the premises, including the garage, was legal.  You may consider the evidence recovered as a result of the search.

*Id.*  For the reasons we have discussed immediately above, we find the trial court's responsive instruction to be entirely consistent with the applicable law.  Thus, we find no basis for relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/2014